STATE v. THOMAS P. BOWMAN.

*Indictment--Murder--Evidence--Expert.*

1. The opinion of an expert, warranted only by assuming the truthfulness and accuracy of what has been testified to by witnesses, is not admissible.

2. Such evidence is competent only when founded on facts within the personal knowledge or observation of the expert, or upon the hypothesis of the finding of the jury.

3. Where, on a trial for murder, a physician who stated that he had heard the statements of the witnesses as to the circumstances immediately preceding the illness of the deceased, the appearance of the body immediately after death, the condition of the limbs, &c., &c., and could therefrom form an opinion as to the cause of death, was permitted to testify what in his opinion was the cause of the death of the deceased ; *Held,* to be error.

INDICTMENT for Murder, removed from Rockingham and tried at December Special Term, 1877, of GUILFORD Superior Court, before *Buxton, J.*

That portion of the case which constitutes the basis of the decision of this Court, is sufficiently set out in the opinion delivered by THE CHIEF JUSTICE. Verdict of guilty. Appeal by the defendant.

*Attorney General* and *Messrs. Boyd & Reid,* for the State.
*Messrs. J. T. Morehead* and *J. E. Boyd,* for the defendant.

SMITH, C. J. The prisoner is charged with the crime of murder in administering poison to his wife, and upon the trial was found guilty. Judgment of death was pronounced, from which he appealed to this Court.

The case presented for our review contains a full and minute account of the trial, the evidence adduced for the State, the exceptions taken for the prisoner, and the rulings

of the Court during its progress. The prisoner offered no evidence. The exceptions are numerous and were elaborately argued upon the hearing before us by the Attorney General and the counsel for the prisoner, and their researches and citation of authorities would have greatly lessened our labors had we been called on to investigate the various questions discussed. But we are relieved of the necessity of doing this by the view which we take of the case.

Many witness were examined and testified to the circumstances attending the death of the deceased, the symptoms developed during the last moments of life and immediately after its extinction, the declaration of the deceased that she was poisoned, the two disinterments and examinations of the body, the discovery of strychnine in some of the internal organs in a chemical analysis of their contents made by Prof. Redd, a witness in the cause, the tests resorted to by him to ascertain and prove the nature and efficacy of the poison, and other facts relied on to establish the prisoner's guilt. Three physicians were present during the trial and heard the evidence and were examined as experts. The same questions were propounded to each, the same objections interposed by prisoner's counsel and overruled, and substantially the same testimony given by all, and it is therefore only necessary to consider the exception to the evidence of one of them.

Dr. R. H. Gregory, introduced as an expert, testified as follows; " I have practiced medicine twenty years, actively employed. I have heard the evidence of Mrs. Bowman's death, I have heard the symptoms described by the witnesses, and I have heard the examination of Prof. Redd, as to his finding strychnine in the body, and I am prepared to give an opinion as to the cause of her death."

On the part of the State the following questions were then propounded, which with the answers were objected to by the prisoner but allowed by the Court:—

1. "Have you heard the statements of the witnesses as to the circumstances immediately preceding her being taken sick, the appearance of the body immediately after death, its appearance subsequent and before interment, the condition of her limbs and members, the account given by the deceased of her manner of death, her asking to have her feet uncrossed, and the manner in which she gripped him and her child, and have you heard the testimony of Mr. Redd as to his analysis and its results, and from them can you as a physician form an opinion as to the cause of her death?" The witness answered, "Yes."

2. "In giving answer, do you exclude from your consideration the evidence of other circumstances in the nature of moral evidence in the case?" The witness answered, "I do."

3. "What in your opinion was the cause of her death?" The witness answered, "I believe it was strychnine."

The prisoner excepts to this course of examination and to the action of the Court in permitting the opinion of the witness to be given to the jury. The correctness of this ruling is presented for our review, and after a careful and deliberate consideration we have come to the conclusion that the evidence ought not to have been received.

The opinions of those who are skilled in any department of art or science, resting upon undisputed facts and within the scope of their special calling, are not only competent to be heard by the jury, but often greatly assist in the formation of a correct judgment upon matters they are called on to investigate. The superior knowledge of the expert is frequently required in the conduct of judicial examination of subjects beyond the reach of common observation. But this evidence has its restrictions, and must never be allowed to invade the rightful and exclusive province of the jury in drawing their own conclusions from the testimony, of the credibility of which they alone must judge. It is their duty to hear and pass upon the evidence, and the expert's opinion

is admitted only to aid in performing that duty. It is obviously improper for any one, expert or non-expert, to express an opinion, warranted only by assuming the truthfulness and accuracy of what witnesses have testified. Such evidence is competent, only when founded on facts within the personal knowledge and observation of the expert, or upon the hypothesis of the finding of the jury. The testimony given against the prisoner in support of the charge contained in the indictment, was not admitted to be true, and the presiding Judge begins his charge to the jury by reminding them, " that the death of the deceased is about the only fact conceded in the case."

It is true that trials have occurred where the defence of insanity was relied on, and medical men have been permitted to express an absolute opinion, resting entirely upon testimony there given in, and it was in consequence of the acquittal of David McNaughton charged with the murder of one Drummond in an English Criminal Court, in the year 1843, that public attention was directed to the subject, and the opinions of the Judges obtained in answer to an inquiry of the House of Lords, which may be regarded as a definite and final settlement of the law. One of the questions submitted to the Judges, was in these words ;—" Can a medical man conversant with the disease of insanity, who never saw the prisoner previous to the trial, but who was present during the whole trial and the examination of all the witnesses, be asked his opinion as to the state of the prisoner's mind, at the time of the commission of the alleged crime; or his opinion whether the prisoner was conscious, at the time of doing the act, that he was acting contrary to law ; or whether he was acting under any and what delusion at the time ?"

To this question, Chief Justice TINDALL on behalf of the Judges replied;—" We think the medical man under the circumstances supposed cannot in strictness be asked his

opinion in the terms above stated, because each of those questions involves the determination of the truth of the facts deposed to, which it is for the jury to decide, and the questions are not mere questions upon a matter of science, in which case such evidence is admissible. But where the facts are admitted or not disputed, and the question becomes substantially one of science only, it may be convenient to allow the question to be put in that general form, though the same cannot be insisted on as a matter of right." *Regina* v. *Higginson*, 47 E. C. L. Rep. 129 note a.

The proper mode of examination of experts is thus declared by Chief Justice SHAW;—"Where the medical or other professional witnesses have attended the whole trial and heard the testimony of the other witnesses as to the facts and circumstances of the case, they are not to judge of the credit of the witnesses, or of the truth of the facts testified to by others. It is for the jury to decide whether such facts are satisfactorily proved, and the proper question to be put to the professional witness is this,—If the symptoms and indications testified to by the other witnesses are proved, *and if the jury are satisfied of the truth of them, whether in his opinion, the party was insane,* and what was the nature and character of that insanity, what state of mind did they indicate, and what he would expect to be the conduct of such person in any supposed circumstances." *Commonwealth* v. *Rogers*, 7 Metc. (Mass.) 500.

The same learned Judge in another case before him uses this language;—"We think the question put to Dr. Williams, as an expert, asking his opinion whether, having heard the evidence, he was or was not of the opinion that the testator was of sound mind, was not admissible in that form," and that the proper way to interrogate the expert is, " *If certain facts assumed by the question to be established* by the evidence should be found true by the jury, *what would be his opinion* upon the facts thus found true, on the question of

33

soundness of mind." *Woodbury* v. *Obear*, 7 Gray (Mass.) 467.

Mr. Justice CURTIS thus lays down the rule;—"It is not the province of an expert to draw inferences of fact from the evidence, but simply to *declare his opinion upon a known or hypothetical state of facts.*" *United States* v. *McGlue*, 1 Curtis 1. To the like effect is the case of *Heald* v. *Thing*, 45 Maine 392; and the elementary writers generally concur in this view of the law. 1 Greenl. Ev. § 440; Redfield's Am. Cases on Law of Wills, 40; 1 Whar. Law of Evidence § 452; Whar. Cr. Law § 50 f.

It is unnecessary to pursue the discussion further, or to cite additional authorities in support of a rule resting upon sound reason, and commending itself to our entire approval. Although the cases referred to involved an inquiry into the state of mind of the party, and to determine his capacity to do a testamentary act, or his responsibility for an alleged criminal act, the principle is equally applicable to medical opinions as to the physical effects of poisonous substances introduced into the human system, and the indications of their presence.

The rule was in our opinion violated in permitting Dr. Gregory to give to the jury his opinion of the cause of death of the deceased, without those salutary restrictions which this kind of evidence requires. It is not for us to attempt to measure or to speculate upon the influence which the opinion of an intelligent physician formed upon the very testimony which the jury had heard, may have exercised over their minds in conducting them to their verdict. It is sufficient that it was calculated to have an effect and to mislead. The death of the deceased from poison was an essential element in the crime charged against the prisoner, and necessary to be proved in order to his conviction. It could be proved only by legal and competent evidence. The opinion expressed by Dr. Gregory in the form in which

it was allowed to be given, was not competent, and entitles ·
the prisoner to another trial, in which he will have the pro-
tection of all those safeguards which the wisdom and hu-
manity of the law provide for all who are put in peril.
.  Error.

PER CURIAM.                              *Venire de novo.*