## STATE v. H. C. SECREST.

*Indictment—Murder—Practice—Appeal—Competency of Witness—Expert.*

1. On an indictment for murder brought by appeal to this court, an exception that the case contained in the record fails to disclose sufficient proof of the *corpus delicti* cannot be taken in this court, it not appearing that any such point was made on the trial below or any such instruction asked of the court.

2. When the competency of a witness is called in question, it is error to permit him to testify before the facts upon which the competency depends are determined by the court, and on appeal these facts must be set out in the record.

3. Where, on the trial of an indictment for murder, a witness was allowed to testify as an expert, without any preliminary examination of his opportunities for acquiring professional knowledge and skill, the defendant objecting; *Held* to be error. And in such case, it is not indispensable to entitle the defendant to the benefit of the objection in this court, that the ground of his objection to the personal competency of the witness should have been stated on the trial below.

.(*Green* v. *Collins*, 6 Ire., 139; *State* v. *Parish*, Busb., 239; *State* v. *Norton*, 1 Winst., 296, cited and approved.

INDICTMENT for Murder removed from Burke and tried at Fall Term, 1878, of McDOWELL Superior Court, before *Gudger, J.*

The prisoner was charged with the murder of his wife by means to the jurors unknown. The case states that the prosecution relied wholly on circumstantial evidence tending to show that the homicide occurred on the 6th of March, 1877, while the prisoner alleged that his wife was living long after that date, and proposed to prove by a witness that about christmas, 1877, a lady and child came on board the cars at Chester, S. C., and the lady told the witness she was going to Monroe in Union county, N. C. (It had been shown by the state that a few days before she was last seen, she had left Union county, which was her home, in com-

pany with the prisoner, and travelled with him to one Cline's, near the town of Hickory in Catawba county.) Objection was made, but withdrawn, and the evidence admitted. There was other evidence offered on behalf of the prisoner for the purpose of showing that his wife was seen in Charlotte in January, 1878.

Certain remains had been found in Burke county, alleged to be those of the wife and little daughter of the prisoner, and the state offered evidence to the effect that bones, hair, a snuff box, pair of copper-tipped child shoes, stockings, pieces of calico, flannel and blanket, and a lady's cloth gaiter, were found in a grave about six feet long, eighteen inches deep, and twenty inches wide; and that these various articles belonged to the deceased, Maggie Secrest and her four year old child Minnie, and were parts of their dress.

" The prisoner introduced Dr. R. C. Pearson, as an expert, who stated that the bones shown him were parts of the skeletons of two human beings, one an adult and the other a child, and gave much other evidence in regard to the remains, and also his opinion on many questions as to the condition of human remains, when buried, how long before decay would set in, when it would be complete," &c.

" The state called Dr. W. A. Collet, as an expert, and proposed to examine him in reply to Dr. Pearson's testimony in regard to these remains. Objection was made by the prisoner, which was overruled and Dr. Collet allowed to testify, and the prisoner excepted."

" It was in evidence that a pair of small copper-tipped leather shoes were found in the grave, one lying on top of the other, with the soles to the east, the toes towards the south and turned a little upwards, with a small stocking in each; that there were no bones or animal remains in the shoes or stockings, except a white mould in the shoes. Dr. Pearson was asked by the prisoner if in his opinion the bones of the foot or leg could have been drawn out of the

shoes and stockings without disturbing their position, and he said he thought not. In reply to Dr. Pearson, the state asked the following question of Dr. Collet: ' If a child from three to four years old should be buried with its clothes on, which child had died by violence and with animal heat in it, in a grave eighteen inches deep without a coffin, would putrefaction or decomposition of the soft parts of the feet have been so far advanced, that at the expiration of three, four, or five months, or if longer, how much longer a time, the bones could have been pulled out without disturbing the shoes.' This question was objected to by the prisoner, objection overruled and Dr. Collet allowed to answer, and prisoner excepted."

"All the questions asked by both sides of the medical witnesses were by consent propounded on the assumption of the facts stated being found true by the jury."

It is not necessary to an understanding of the opinion that the facts applicable to the other exceptions should be stated. Verdict of guilty, judgment, appeal by prisoner.

*Attorney General,* for the state.

*Messrs. Reade, Busbee & Busbee* and *D. A. Covington,* for the prisoner.

SMITH, C. J. In the able and earnest argument on behalf of the prisoner his counsel insisted that the case contained in the record failed to disclose sufficient proof of the *corpus delicti,* or offence charged, to authorize the jury to pass upon the question of the prisoner's guilt. It is contended that the evidence does not establish the death of the prisoner's wife with whose murder he is charged, nor identify the remains taken from the place of their deposit in the pit, as hers, nor show that the person found died from an act of violence, and that without proof of these facts the jury should have been instructed not to prosecute the enquiry further, but to acquit.

The argument is not warranted by the record. No such point seems to have been made at the trial, and no such instruction asked of the court. We cannot assume that all the facts proved at the trial are contained in the case sent up for our review, and under the well settled rule they ought not to be. In the preparation of cases on appeal, as we have often had occasion to remind the profession, no more of the evidence should be stated than such as relates to the exceptions intended to be presented and is calculated to elucidate and explain them. The rule was enforced under the old, as it is under the new system of practice, and its observance is essential to the proper exercise of the appellate power conferred upn this court. "It would be much better," says Ruffin, C. J., in *Green* v. *Collins*, 6 Ire., 139, "to state only so much of the evidence as raised a question of law at the trial, and then the opinion prayed and given thereon with simplicity and precision."

This course is prescribed "so that it may be distinctly known what error is alleged, and the parties not be surprised by decisions in this court on points different from those intended."

We must so understand the statement to have been prepared in this case, and consequently the exception, not appearing therein and now for the first time pressed, cannot be entertained.

There were several exceptions taken for the prisoner during the trial, but it is only necessary to notice one in our view decisive of the case.

The defendant introduced Dr. R. C. Pearson as an expert who was examined in regard to the disinterred bones, alleged by the state to be those of the prisoner's wife and child, and gave his opinion "on many questions asked him as to the condition of human remains, when buried, how long before decay would set in, and when it would be complete, &c."

Thereupon the state called on Dr. W. A. Collett *as an*

*expert*, and " proposed to examine him in reply to the testimony of Dr. Pearson in regard to these remains," &c. The prisoner objected to the competency of the witness; the objection was overruled and the witness allowed to testify.

The following question was then propounded by the solicitor: " If a child from three to four years old should be buried with its clothes on, who had died by violence and with animal heat in it, in a grave eighteen inches deep, without a coffin, on its side, would putrefaction or decomposition of the soft parts of the feet have been so far advanced that at the expiration of three, four or five months, or if longer, how much longer a time, the bones could have been pulled out without disturbing the shoes ?" &c.

The question was objected to by the prisoner's counsel, the objection overruled and the witness permitted to answer it. It does not appear what his answer was.

The objection to the competency of Dr. Collet to testify at all, though the grounds of the objection are not stated and seem not to have been demanded, must be understood to refer to the absence of evidence of his possessing the qualifications acquired by study and experience which entitled the witness to give an opinion to the jury. This objection, as far as the record shows, was not removed by the preliminary examination of the witness as to his opportunities for acquiring professional knowledge and skill so as to enable him to testify *as an expert*, nor does his qualification appear in the evidence set out in the case. He is called Dr. Collet, but the name and address of the witness do not furnish the necessary proof, and none other was offered.

It is usual and proper, when objection is made to the personal competence of the witness to testify, or to the admissibility of the proposed testimony, to require the grounds of the objection to be stated, as well that an intelligent ruling may be made upon the question presented, as to prevent surprise. The practice is reasonable and convenient and

should be pursued. But it has been held in a capital trial that this was not indispensable to the validity of an exception to improper evidence received. The rule is distinctly declared and acted on in the case of the *State* v. *Parish*, Busb., 239. In that case the solicitor proposed to prove confessions of the prisoner to the examining justices before whom he was brought. The evidence was objected to, and thereupon the solicitor understanding the objection to be directed to the restraint and influences under which the confessions are supposed to have been obtained, at once removed the objection by showing that they did not proceed from any threat, promise, or other inducement of hope or fear held out to the prisoner, and that they were entirely voluntary. The evidence was received, and for this error in the ruling of the court a new trial was granted. In delivering the opinion, PEARSON, J., adverting to the duty of an examining magistrate to reduce to writing the statements of a prisoner brought before him and the legal presumption that this was done, proceeds to say: " In the case before us it was not proved that the examination had not been taken down in writing by the magistrate as it was his duty to do. The objection therefore is fatal if it is presented by the bill of exceptions. In reference to this we had some difficulty. The evidence was objected to in general terms." Then referring to the removal of the ground of objection that the declarations were not voluntary, he continues: " And thereupon His Honor admitted the evidence without adverting to the fact that there was still the ground of objection above referred to. And the question is, was it the duty of the prisoner's counsel to apprise the solicitor for the state, or to inform the court, that there was still this ground of objection to the admissibility of the evidence? or was it the duty of the solicitor or of the court to call upon the prisoner to state his ground of objection? As this requisition was not made on the prisoner's counsel, we are unable to see any

reason why the omission to state the ground of objection to the evidence should preclude the prisoner from insisting that he is entitled to a *venire de novo.*"

The same ruling was made afterwards in *State* v. *Norton,* 1 Winst., 296. In that case objection was made by the prisoner to the examination of a witness for the state on the ground that the witness was of negro blood and within the prohibited degree. To meet the objection, evidence was offered by the state to prove that the prisoner was also of negro blood and the witness was competent to testify against him as provided in Rev. Code, ch. 107, § 71. The witness was allowed to testify, and PEARSON, C. J., reviewing this ruling, says: " But he," the presiding judge, " does not find or set out the fact or facts found. In other words, he did not have his attention called to the difference between the *evidence* and the *fact* or *facts* established by the evidence. So the case comes up in such a condition that this court cannot revise his decision, because we do not know upon what state of facts he formed his opinion." Then comparing the case to that of a special verdict setting out the evidence and not the facts, and on which no judgment can consequently be pronounced, he adds: "In our case there is the same error. The judge does not find the facts. As the matter relates to a collateral issue touching the competency of a witness, its effect is to entitle the prisoner to a *venire de novo.*"

There are authorities for the rule contended for in the argument for the prisoner, that when the competency of a witness is called in question it is error to permit him to testify before the facts upon which the competency depends are determined by the court, and those facts must be set out in the record. It only remains to consider the application of the principle to the case now before us.

It is undoubtedly the province of the court in this as in other cases touching the competency of the witness, to examine and decide the preliminary question whether the

witness offered as such is an expert and possesses the knowledge and experience which the law requires before his opinions upon a matter of science will be permitted to go to the jury.   The same principle is declared in *Flynt* v. *Bodenhamer, ante*, 205.   We did not then deem it necessary to sustain our opinion by the citation of authorities and shall now refer to but few.

In *Boardman* v. *Woodman*, 47 N. H., 120, the court say : "Whether he" (the witness) "had the qualifications of an expert was a question of fact for the court to settle, and when the court had ruled that he was competent, the opinion of the witness on his own competency was in law entirely immaterial."

" It was for the court," says WILSON, J., "in the first instance to determine whether these witnesses possessed sufficient skill to entitle them to give an opinion as experts, before they were admitted to give evidence to the jury, as to the identity of the standards with the contested paper." *State* v. *Ward*, 39 Vt., 225 ; *Berry* v. *Reed*, 53 Me., 487.

The court simply decides upon proof of the opportunities which the witness has had for acquiring special knowledge and his experience in his profession, that the jury may hear the opinions of the witness as a person of science and skill, but the value and weight of the evidence rests exclusively with the jury to determine.   We do not mean to intimate that the witness in this case is not an expert in the full sense of the term, but no proof seems to have been made of the fact and none appears in the record.

In the absence of any proof of the witness' qualifications as an expert in the matter about which he was called on to give, and did give an opinion, the prisoner's objection to the testimony was well taken and it ought not to have been received.   For the error in admitting the evidence there must be a *venire de novo*, and it is so ordered.

PER CURIAM.                     *Venire de novo.*