### J. D. T. WELLONS and others v. W. N. JORDAN.

*Practice—Description of Land—Will—Condition.*

1. Objections will not be heard for the first time in this court which, if made in apt time in the court below, might have been answered and removed.

2. The court will not hold a description of land in controversy too indefinite to admit parol proof to identify it when such description calls for natural boundaries and the lines of adjoining proprietors, especially, when the defendant admits in his answer that he withholds the possession of the land claimed by the plaintiffs.

3. A testator devised certain lands to his grandson, he to take care of his father and mother during their lives, and to hold the aforesaid property his life-time, and if he should take care of his parents, &c., and have issue, said property to be theirs in fee at his death; but if he should die without issue, then it was to "descend" to the testator's daughters in fee;

   *Held*, (1) That a due support of the parents of the devisee was not a condition precedent to the vesting of the remainder in fee in his issue;

   (2) That even if such were a proper construction of the will, only the heirs of the testator could take advantage of the breach of the condition.

(*Meekins* v. *Tatem*, 79 N. C., 546; *Bank* v. *Graham*, 82 N. C., 489; *State* v. *Secrest*, 80 N. C., 450; *Taylor* v. *Lanier*, 3 Murp., 98; *McNeely* v. *McNeely*, 82 N. C., 183; *Phelps* v. *Chesson*, 12 Ired., 194, cited an approved.)

CIVIL ACTION to recover land tried at Spring Term, 1879,. of JOHNSTON Superior Court, before *McKoy, J.*

This action is for the recovery of land in possession of the defendant, who denies the plaintiff's right and asserts title in himself. The cause was referred to E. W. Pou, who made three successive reports, two of which were set aside and to the last at spring term, 1879, the defendant put in several exceptions. 1. For uncertainty in the finding in regard to the support furnished by the devisee, Harry, to his father and mother. 2. For the failure of the referee to find that such support was not afforded as required by the testator ; and 3. For error in his conclusion of law that the plaintiffs were entitled to the land. The exceptions were overruled, the report confirmed, and from the judgment rendered conformably thereto the defendant appealed..

*Mr. Duncan Rose,* for plaintiffs.
*Messrs. G. V. Strong* and *A. M. Lewis,* for defendant.

SMITH, C. J. The solution of the controversy mainly depends upon the construction of the following clause in the will of Shadrack Ingram, who died in 1829 :

"I lend unto my grandson Henry (Harry) Ingram, two tracts of land containing one hundred acres each, lying on the south-side of Hannah's creek, being on the road and on the head of Meadow branch, joining M. Vinson, M. Allen and Hardy Lee's land, and one hundred acres below the spring branch, joining William Allen's land on the south-side of the creek, on said creek between the Watery branch and Meadow branch, joining Wm. Lee, Hardy Lee,, and the Allen lands, some under one hundred acres in it, and one negro boy, named Sam, two cows and two sows. Said Harry Ingram is to take care of his father and mother and to support their bodily needs, as far as in his power,. their life time, and to hold the foresaid property his life-

time, and if he does take care of his parents and support them as above prescribed, and has issue, said property shall be theirs and their heirs forever. But if he die without issue, then it shall descend to my daughters and their heirs forever, after a bodily support for his father and mother their life time, if the said Harry Ingram should decease before they do."

The following facts are reported by the referee: The defendant is in possession of sixty-two acres of the devised land. At the death of the testator, his grandson Harry was seventeen years of age, and soon after Ambrose his father, and himself, built a house on the land, which was occupied by the family until 1833. In that year Ambrose and Harry contracted to sell the tract known as "Sockery place," to Nathan B. Allen, and the latter when he attained his majority in October of that year, executed a deed of conveyance therefor to Allen both understanding it to pass a life estate only. This was done at the instance of Ambrose who received in different articles most of the purchase money. Ambrose died soon after, and Harry, who while not lunatic, was of feeble mind, was not faithful in his attentions during his father's illness, but his father never suffered for the necessaries of life. About 1846 or 1847, his mother, Sally, also died. Harry lived with her till his marriage and then moved into a house on the same tract, some four hundred yards distant, and occasionally worked on her farm. She owned land, slaves and other property and had the means of comfortable subsistence. Harry did not take care of her and passed most of his time in childish amusements, but his life estate went mainly to the support and use of his parents.

Upon these facts the exceptions rest for support, and are now to be considered.

1. Upon the whole case, for want of proof of title the plaintiffs cannot maintain their action: This objection was

not made in the court below, nor the subject of investigation by the referee. The dispute as to title seems to have been limited to the proper interpretation of the will of Shadrack Ingram, and his ownership of the land conceded. According to the settled practice, points first made in this court, and which if taken at the trial, could have been perhaps fully answered and removed, will not be allowed, and cases on appeal are considered as prepared only to present such as were then taken and ruled. The cases relied on, *Meekins* v. *Tatem*, 79 N. C., 546, and *Bank* v. *Graham*, 82 N. C., 489, do not sustain the position for which they are cited. They simply declare that when upon the plaintiff's own showing, that is, upon the case he presents in his complaint, there is a want of jurisdiction, or cause of action apparent, the court will notice the objection and act upon it. But they do not establish the proposition nor warrant the inference that every omission to state a fact, material to the right of recovery, is to be considered as if the fact did not exist. Cases are made up to present exceptions and the decisions upon them and only such facts as are necessary to their being understood; and hence the propriety of the rule that excludes from consideration all such as were not taken in the court below. · *State* v. *Secrest*, 80 N. C., 450.

2. The land is not sufficiently described in the will, nor in the complaint. The defendant recognizes the identity of the land claimed, and in his answer " admits that he withholds the possession of the said premises " and asserts title thereto in himself. How could he say this unless he knew from the complaint what lands were demanded of him and are claimed by himself? There seems to have been no controversy about the identity of the devised land as defined in the will, of which that in the defendant's occupancy forms part, and we cannot, from mere inspection of the will, undertake to determine that a description calling for various natural objects and lines of adjoining proprie-

tors, and located in the survey ordered, is too imperfect to admit of location by parol evidence.

3. The devise to the plaintiffs, the issue of Harry, upon the condition precedent that "he does take care of his parents and support them," fails for want of compliance with its requirements: We do not think the testator intended nor that the language employed expresses an intent that the limitation over to the issue of Harry was to be dependent upon his taking care of and supplying the bodily wants of his parents, since the further contingent remainder is given to the testator's daughters only in the event that Harry "dies without issue," and not also for want of the care and attention enjoined and expected. At most it would be a charge on the estate, a personal obligation on the devisee, as was held in *Taylor* v. *Lanier*, 3 Muph., 98. As was said in *McNeely* v. *McNeely*, 82 N. C., 183, where the devise was to a son "by him seeing to her," his mother, and it was contended that these words fettered and controlled the estate devised: "In the will now under consideration the words which give rise to the controversy 'by him seeing to her' are in themselves vague and indeterminate. and if an essential and defeating condition of the gift, would be very difficult of application. What is meant by seeing to the widow, and what neglects fall short of that duty? How much of personal care and attention in the son to the mother is requisite, and how is the dividing line to be run between such omissions as are, and such as are not, fatal to the devise?

In *Willard* v. *Henry*, 2 N. H., 120, cited by defendant's counsel, the land was conveyed by the father to his son by deed in February, 1803, on condition that unless the son maintained both his parents and a brother in a specified manner, and cultivated the farm with care and fidelity, the deed should become void as to the whole land during the life of the parents, and after their death, as to an undivided

half should continue void forever.   In 1807 the father died
and the widow repudiated the provision for her in the deed
and took dower in the land.   She died in 1818.   In 1808
the son sold and conveyed the land to the ancestor of the
plaintiff in the action.   Neither the father nor mother was
maintained as directed in the deed, nor was the farm culti-
vated in a husbandlike manner.   The brother had been
provided for.   No entry for condition broken was made.
The opinion of the court delivered by WOODBURY, J., de-
clares : " The parents being dead, the plaintiffs may recover
one-half for the condition in relation to half; whatever may
have been its validity, and however it may have been bro-
ken, was not to operate after their decease.   In respect to
the other half, no re-entry or express claim to the premises
is found ; the plaintiff can therefore recover that also."   The
reasoning and the conclusions are not inappropriate to our
case.   Who is to take advantage of a condition broken?
Who to assert the right to the support?   The parents have
neither done so, and both are dead, as well as their son upon
whom and whose estate this obligation was imposed.   The
charge to them ceases.   The mother had a satisfactory main-
tenance from her own estate, the father used the proceeds
of the son's sale of his life estate.   The life estate itself is
extinct, and the plaintiffs come in and take, simply because
they are the issue of the life tenant, and such is the lan-
guage of the will.   If however such effect were to be as-
cribed to the testator's words as contended for the defendant,
we are not prepared to say there has been that dereliction
of duty and disregard of the conditions as to defeat the
limitation over to the plaintiffs.

But the defendants are in no privity with any of the par-
ties interested under the will.   They are simply wrong do-
ers, raising issues between others who make none among
themselves to quiet and confirm their own illegal occupa-
tion.

" When any man " says LORD COKE, " will take advantage of condition broken, if he may enter he must enter, and when he cannot enter, he must make claim, and the reason is for that a freehold of inheritance shall not cease without entry or claim, and also the feoffor or grantor may waive the condition at his pleasure." 2 Coke, 536.

The only person who could enter or make claim for nonperformance of the alleged condition precedent to the vesting of the estate in the plaintiffs are the heirs at law of the testator, and they assert no title thereto. *Phelps* v. *Chesson*, 12 Ired., 194.

There is no error, and the judgment is affirmed.

No error.                                            Affirmed.