STATE v. BENJAMIN G. COLE.

*Evidence— Witness—Expert— Opinion.*

1. Where a prisoner was tried for murder by poisoning, and at the time of the death, stated that the deceased had had a similar attack some years before, for which a certain physician attended her; *It was held*, that such attending physician could be allowed to give an account of such previous illness.

2. Whether or not a witness is an expert, is a question of fact to be decided by the Court, and its finding is conclusive, and not subject to review.

3. Where a prisoner is accused of murder by poisoning with strychnia, it is competent to show that he bought some of this drug the previous year.

4. An expert may be asked his opinion, based upon evidence already offered, if the jury shall believe such evidence. Such opinion must not be the positive opinion of the expert, founded upon his own observation and the testimony of others, but must be wholly contingent upon the facts, as the jury shall find them to be.

(*Flynt* v. *Bodenhamer*, 80 N. C., 205 ; *State* v. *Sanders*, 84 N. C., 728.; *State* v. *Efler*, 85 N. C., 585 ; *State* v. *Burgwyn*, 87 N. C., 572 ; *State* v. *Bowman*, 78 N. C., 509, cited and approved. *State* v. *Secrest*, 80 N. C., 450 ; *State* v. *Parish*, Busb., 239, cited and commented on).

INDICTMENT for murder, tried before *MacRae, Judge*, and a jury, at August Term, 1885, of the Superior Court of MOORE county.

The prisoner is charged with the crime of murder, committed on the body of Mahala Cole, his wife, in administering, and inducing her to take, a deadly poison known as strychnia, in quantity sufficient to cause, and which did cause, her immediate death. Upon his trial before the jury, he was found guilty, and from the judgment thereon he appealed to this Court.

The testimony offered on the part of the State, (for none was offered by the prisoner,) so far as is necessary to an intelligent apprehension and disposition of the exceptions appearing in the record, is to this effect :

The deceased dined at the house of one Evander McGilvary, about a half mile distant from her own, in her apparent usual health and cheerful spirits, on Friday, December 5th, 1884, and died soon after returning home, between the hours of 3 and 4 o'clock p. m., no one but her husband being present. Several of the neighbors, hearing of her sudden death, went over, one of whom, Evander McGilvary, found the deceased covered up in the bed, her body drawn up, and her jaw fallen. The prisoner stated to him, that his wife's sister brought to the house, the night before, a bottle of Liver Regulator, and advised him to administer to her a double dose; that he gave it to her, and went out to the

wood-pile, when hearing a noise, he went back to the house, found the deceased down, lifted her up in his arms, and with her aid, carried her to the bed; that her symptoms were very severe, and that when he left the room, after her death, he noticed the time told by the clock, and it lacked fifteen minutes to four. The witness further testified, that a month or two before, he had a conversation with the prisoner, in which he mentioned getting strychnine .for a dog that had broken a nest of eggs, and related the result, when the prisoner remarked, that he could have gotten some from him, as he had a plenty of it.

Another witness, A. M. Wicker, who had married a sister of the deceased, and arrived at the house about sunset of the same day, with his wife and son, remaining during the night, testified to the prisoner's making a similar narration of the circumstances attending his wife's death; that he said: "It seemed to come on her in spells—in nervous jerkings," reminding him of a similar attack some years before, and which he attempted to illustrate by jerking his own arms. This occurred in or about the year 1873, and witness told the prisoner that he remembered it. Dr. Arnold, his wife, and Mrs. Sylvia Cole, were also present on that occasion. Prisoner said, she—the deceased—had just such a spell this evening. The body was buried some two days after death, and was disinterred, for exhibition before the coroner's jury, in March following, and it was identified, although the face was beyond recognition. Dr. William Arnold, after a preliminary statement, in which he said he had practiced medicine since 1857; had attended medical lectures for one course, but did not graduate, testified, that he was present when the deceased had the attack, about 1873, and had heard the previous witness' evidence in relation to it.

The witness was then asked, on behalf of the State, to give a description of what then occurred. This was objected to for the prisoner, but the question was allowed, and the witness testified thus:

" The prisoner came over in a great hurry for me, and I went. She was recovering from a hard spasm—twitching. I gave her an emetic, corded her arm for bleeding, and, while bleeding, she had another general cramping of the muscles—tetanic convulsions. I saw two of them. I can't say what causes these tetanic symptoms."

To the question and answer, counsel for the prisoner excepted, and this is his first exception.

The further question was then asked, objected to, and the objection overruled, as follows:

" What, in your professional opinion, was the cause of these convulsions." To which the answer allowed was, " My opinion was, that she had got some strychnia in some bitters she got that morning." To this ruling of the Court, the prisoner's counsel also excepted, this being his second exception. The witness, also, after objection, was allowed to testify as follows: " I had let the prisoner have some strychnia the Spring of the year before that, to bait some crows."

To this ruling the third exception is taken.

The witness was not present at the last and fatal attack, and did not hear of it until the hour of eleven at night. But he testified that on Monday, after the funeral, the prisoner asked the amount of his bill for previous medical services; said he was going to sell out, and there might be something the witness would like to have. At another time, he said to witness, that he expected to leave, as soon as he could get clear of what plunder he had ; that he had a bottle of strychnia he would give witness, as he did not care to give it to everybody. A few days later, the bottle was sent over to witness, and he had not opened it. It was subsequently examined by an expert, and found to contain strychnia.

The witness and Dr. Snipes saw the exhumation made before the jury of inquest, and took the stomach, with what it contained, from the body, and placed it in a clean glass jar, sealed it up, and, in the same condition, afterwards placed the jar in

the hands of S. J. Hinsdale, of Fayetteville, for examination, and said there was not much decomposition, though the features were sunken and changed.

Dr. E. B. Snipes, a graduate of Vanderbilt University, and a physician of six years practice, was also at the autopsy, and gave the same substantial narrative of what there took place, as the preceding witness.

Samuel J. Hinsdale, a druggist, residing in Fayetteville, a graduate in pharmacy in 1838, and who had made chemistry a study and practice for over forty years, and *toxicology* a study to a greater or less extent, testified to receiving the glass jar and its contents, hermetically sealed, and, upon an analysis and the application of tests, ascertained the existence of strychnia in the stomach. He detailed his mode of proceeding, by which the result was arrived at, and the presence of the poison detected. No controversy seems to have been raised as to his testimony.

Upon being recalled, the following question, reduced to writing, was put to the witness, Dr. Snipes:

"If the jury find the symptoms were as testified to by Dr. Arnold and A. M. Wicker, and the condition of the body after death, as described by Mrs. Annie McGilvary and Mr. Evander McGilvary," (both of whom had given evidence on the point,) "and if the jury should also find that strychnia was found in the stomach of deceased after death, as testified to by the chemist, Dr. Hinsdale, can you say what produced the death?"

The response was, "I give it as my opinion, that strychnia produced death. Nothing would resemble it very much except *traumatic tetanus,* commonly called "lockjaw," caused by some wound. If it was lockjaw, caused by a wound, the jaw would remain rigid, and never drop. A body is warm, and very much relaxed, immediately after death from strychnia, afterwards becoming rigid."

This inquiry, and the answer, were objected to by prisoner's counsel, but admitted by the Court, and exception entered thereto.

There was a verdict of guilty, and from the judgment of death pronounced by the Court, the prisoner appealed.

*Attorney-General,* for the State.
*Mr. R. P. Buxton,* for the defendant.

SMITH, C. J., (after stating the facts). Except a motion in arrest of judgment, not pressed in this Court, and in our opinion not warranted by the form of the indictment, which pursues an approved precedent, Arch. Cr. Pl. 186, these are the only errors pointed out and complained of, as having been committed on the trial of the prisoner, and these only are we required to consider in his application for a new trial.

1st Exception. Dr. Arnold was permitted to give an account of the illness of the deceased in the year 1873.

No ground is assigned, upon which the objection to the competency of the evidence rests, but, in the argument here, its remoteness in time, and tendency to mislead, are urged against its reception. It will be noticed, that the matter had come out in a conversation with the prisoner, in which he described the symptoms of the fatal attack, as similar to those on a former occasion, remarking that she had "just exactly such a spell," describing it. The witness to whom he said this, saw one of those spells, and Dr. Arnold was also called in and treated her at that time. No exception was taken to this evidence when delivered by the witness, Wicker, but was taken to it when Dr. Arnold testified to the same facts. It was referred to by the prisoner, as an expressive and clear way of making known to one, who had been present at the former attack, the physical manifestations that attended her death. The evidence was properly received.

2d Ex. The second exception is to the allowing of the expression of his opinion by Dr. Arnold, as to the cause of this attack.

The argument here, is directed against the competency of the witness, as an expert, not ascertained to be such, to give a professional opinion in the case.

In *State* v. *Secrest*, 80 N. C., 450, objection was made to the competency of a witness to express an opinion, of whose opportunities, and the use made of them, for acquiring skill and experience in his profession, no proof was shown to have been offered and acted on by the Court, and it was sustained. The nature of the objection did not appear, but it was held that any just grounds could be assigned in this Court, when none had been assigned in the Court below, upon the authority of *State* v. *Parish*, Busb., 239.

But in *Flynt* v. *Bodenhamer*, 80 N. C., 205, decided at the same term, in answer to a similar objection, the Court used this language :

"The Court *must decide* whether the witness has had the necessary experience to enable him to testify as an expert. But the value of his opinion, when admissible, must be determined by the jury alone, and it depends upon the opportunities he has had for acquiring skill and knowledge, and the use he has made of those opportunities. If a regular and continuous practice in his profession for thirty years, does not entitle the witness to be regarded as an expert, or *experienced physician*, it is difficult to conceive what would do so." Whether a witness, offered as an expert, is such, is an enquiry to be decided by the Judge, as a fact, and like many other preliminary facts, such as the operation of hope or fear inducing a confession, is conclusively determined by the Judge. *State* v. *Sanders*, 84 N. C., 828 ; *State* v. *Effler*, 85 N. C., 585; *State* v. *Burgwyn*, 87 N. C., 572.

3rd Ex. We see no ground of exception to the proof, that the year previous to the illness of the deceased, the prisoner procured strychnia, for the alleged purpose of killing crows. It is in confirmation of the physician's expressed opinion, that its use was indicated in the effect produced upon her physical condition, so closely resembling those developed at her last illness.

4th Ex. Dr. Snipes, being recalled, proceeded to explain in detail, the effects upon the human system, which this poisonous article, taken in larger or smaller quantities, produces, the time

in which death ensues, and its resistant force against decomposition, and was then asked the question, and allowed to give the answer already recited, over the prisoner's objection.

In this, also, we find no error. Both question and answer rest upon a hypothetical state of facts, of which there was evidence, should the jury so find the facts so to be. This mode of examination is warranted by the ruling in *State* v. *Bowman,* 78 N. C., 509, and the authorities there referred to. The opinion asked, was not a positive opinion, founded by the expert upon his own observation and the testimony of others, which would be ·an invasion of the province of the jury, but is wholly contingent upon the facts, as the jury may ascertain them. In this form, and to aid the jury in their deliberations, such scientific information is allowed to be given.·

After a calm review of the case, we find no error in the record, and as the verdict declares that the unnatural crime of wife murder has been perpetrated by the prisoner, though the result is arrived at upon circumstantial evidence, the law must be vindicated, and the prisoner suffer the consequences of violating it.

This will be certified, to the end that the Court may proceed to judgment upon the verdict, and it is so ordered.

No error. Affirmed.