STATE v. W. A. POTTS and SUSAN F. LINCKE.

*Plea of Insanity—Plea in Abatement—Apt time—Grand jury—*
*Special venire,* §§ 1726, 1739 *The Code—Insanity as a*
*defence—" Dipsomania," " Moral Insanity," " Delirium Tre-*
*mens,"—Evidence; opinions of witness—Jurors; qualification*
*and challenge of—Malice.*

1. A defendant on trial for murder entered the following plea: "I admit the killing, but was insane at the time of the commission thereof; therefore not guilty." The Court rejected all of the plea except that of "not guilty;" *Held*, that such action was proper, as under the plea of not guilty every defence, in repelling, or mitigating and reducing the offence to a lower grade, was admissible.

2. A plea in abatement, on the ground of the incompetency of one of the grand jurors, put in *after* pleading to the indictment, is not in apt time.

3. The partitions of the jury box, instead of being marked " No. 1 " and " No. 2," were marked "jurors drawn" and "jurors not drawn"; there was a lock on each partition, but one key unlocked both; there was but one key and that was placed in the custody of the Register, and *ex-officio* Clerk to the Board of County Commissioners, by the Chairman of the Board ; *Held*, that a special *venire* drawn, under the directions of the presiding judge, from such boxes was legal. (See §§ 1726, 1739, of *The Code.*)

4. The finding of the Court below, that a juror is indifferent, cannot be reviewed. Therefore, where, on a trial for murder, a juror states that he has formed the opinion that the prisoner is guilty on report merely and, while it would require evidence to remove this impression, yet he could, on hearing the evidence from the witnesses and the law from the Court, decide impartially ; *it was held*, that the Court below having decided that he was indifferent there is no review in this Court.

5. A juror related to the prisoner by affinity within the ninth degree is disqualified to sit in the cause, and was properly rejected upon the challenge of the State.

6. If a juror is rejected upon an improper ground of challenge made by the State, the prisoner cannot assign it for error, if a jury is obtained before he has exhausted his peremptory challenges.

7. It is competent in all judicial trials for those, who have had opportunities of observing a person, to testify as to their opinions of his sanity or insanity, although such witnesses are not experts.

8. Experts alone can give an opinion based on facts shown by others, assuming them to be true.

9. Where the killing with a deadly weapon is admitted, the law implies malice, unless its absence is made to appear to the satisfaction of the jury.

10. A prisoner is assumed to be sane, that is, to have the degree of mind and reason required to constitute criminal responsibility for his acts. If insanity is relied on as a defence, the burden is on the prisoner to establish it to the *satisfaction* of the jury.

11. The law recognizes " delirium tremens" as a form of diseased mind, which excuses crime committed while the prisoner was laboring under it to a degree that dethroned reason. But " dipsomania" and "moral insanity" are not recognized by our law as defences.

12. Some forms of insanity, when shown to exist, are presumed to continue, but " delirium tremens " does not come within that class, although chronic insanity, produced by alcohol, and assuming a permanent form such as to undermine reason, does.

13. The prisoner's drunken condition, at the time of the commission of a crime, does not repel malice and reduce his crime to a lower grade.

14. The test of accountability for crime is the ability of the accused to distinguish right from wrong, and that in doing a criminal act he is doing wrong.

Indictment for MURDER, tried before *Graves*, *J.*, at Fall Term, 1887, of the Superior Court of BEAUFORT County.

Verdict of guilty as to W. A. Potts, who, alone, appealed.

*Attorney General*, for the State.

*Mr. D. G. Fowle*, for the defendant.

SMITH, C. J.   The prisoner, W. A. Potts, and Susan F. Lincke, are jointly charged in the indictment with the crime of murder, committed in June, 1887, upon the body of Paul Lincke, the husband of the last named.   Upon their arraignment, in the Superior Court of Beaufort, they pleaded not guilty, and upon trial the prisoner Potts was, by the jury, convicted, and the said Susan F. acquitted of the charge, the first of whom, after sentence of death pronounced against him, appeals to this Court.   The case comes before us in a very unusual and imperfect form, none of the facts developed in the evidence being set out, so that we can understand the character of the homicide, and its attendant circumstances, and the application to them of the rulings complained of, except in general terms.   If there were any doubt left upon our minds as to the grade of the crime, or of its having been committed by a responsible agent, we should not be disposed to proceed, but to remand the cause, or direct the issue of a *certiorari*, to the end that the facts as depending on the evidence and the testimony, material to their support, and pertinent to the errors assigned, be sent up, instead of our having to consider and pass upon propositions of law merely speculative, and whose bearing is imperfectly understood, in a matter so serious and involving human life.   But,

feeling no hesitancy in passing upon the prisoner's exceptions presented in the record before us, we feel at liberty, in this case, to examine and decide them.

1st *Exception.* When called on to plead to the indictment, the prisoner answered, and proposed it should be so entered: " I admit the killing, but was insane at the time of the commission thereof; therefore, not guilty." The preliminary portion of the answer was rejected, and the plea entered in the usual form, divested of the irrelevant and impertinent ·surplusage; and this was entirely proper. The inquiry put to him required a direct and positive response, and this is contained in the plea, not guilty, under which every defence to the charge, in repelling, or mitigating and reducing the offence to a lower grade, was admissible.

The defendant, Susan F., proposed to enter a motion and plea in abatement, on the ground that one of the grand jurors who found the bill was incompetent, he having a case at issue pending at the term in Court. We are relieved of the duty of considering the merits of this motion or plea (for it is designated by both names), for the reason that it was *after* pleading to the indictment, and not in apt time— *State* v. *Watson*, 86 N. C., 624—and became wholly unimportant by the verdict of acquittal.

2*d Ex.* The appellant objected to the order for the drawing of the jurors, to constitute the special *venire*, from the jury box, and its execution made by the Judge, for the reasons appearing to him sufficient to warrant it under section 1739 of *The Code.*

We see no valid reason assigned against the order, and the only variations of the facts, proved and found by the Court, from the strict statutory provisions are, that the key, ·of which there was but one, which unlocks both apartments, was put by the chairman of the County Commissioners with their clerk, the Register, for safe keeping, and he swears that it has been kept in his office ever since the last regular draw-

ing of jurors, accessible to no one, and in that the apartments are marked, "Jurors drawn," and "Jurors not drawn," instead of being numbered, number one and two. Those of the special *venire* were drawn from the apartment labelled, "Jurors not drawn." The ruling is correct, and. the deviation from a direction merely of the act is not a material matter, as its essential provisions for the security. of the accused have been observed. *State* v. *Martin*, 82 N. C., 672.

*3d Ex.* The next exception is, to the ruling of the prisoner's challenge of a juror for favor, that he was indifferent and competent, and the same ruling applied to seven other similar challenges for cause.

The juror, on examination, stated that he had formed the opinion that the prisoner was guilty on report merely, never having heard the witnesses speak of the matter, and that while it would require evidence to remove the impression, yet he could, on hearing the evidence from witnesses and the law from the Court, disregard the opinion formed and decide impartially.

The Court found as a fact that the juror was indifferent, and this is conclusive and unreviewable in this Court. *Branton* v. *O'Briant*, 93 N. C., 99; *State* v. *Cole*, 94 N. C., 958.

*4th Ex.* A juror, challenged by the State for cause, that he was related to the prisoner by affinity within the ninth degree, was held to be disqualified to sit in the cause. The juror swore that "he believed he was nearly related to the prisoner by marriage; that his wife was kin—he did not know in what degree—it might be fifth cousin. The Court found that the juror was related to the prisoner within the ninth degree. The ruling upon the sufficiency of the cause of challenge is sustained in *State* v. *Perry*, Busb., 330; *State* v. *Baldwin*, 80 N. C., 390, and other authorities. But a further and complete answer to the exceptions, referable to all the jurors is, that there were twelve peremptory challenges remaining to the prisoner, and he could have stricken from.

the list a juror obnoxious to him, in the exercise of the right of peremptory challenge, and a satisfactory and impartial jury was obtained, and this right to an impartial jury is all that is secured to the prisoner.   This is ruled, without reference to older cases in our reports, in *State* v. *Hensley*, 94 N. C., 1021: *State* v. *Gooch*, Ib., 987 (1021) and in *State* v. *Jones*, 97 N. C., 469.

The remaining errors assigned, grew out of instructions asked and refused, and instructions given to the jury in place of them.   The principal defence set up for the prisoner, was an alleged want of mental capacity to commit a criminal act, brought on by excessive use of alcoholic stimulants.   The testimony of witnesses introduced by the State, who had long known the prisoner, one of whom saw him on the night of the homicide, and another the morning after, as to his habits and condition, was to the effect, that, while he drank freely, there were no indications of a disordered mind, other than such as is common to drunken men, and all concur, that, in their opinion, he was not insane.

The prisoner excepted to any expression of the opinion of the witnesses, because they were not experts, as to the prisoner's mental condition.   Ever since the delivery of the able and lucid opinion of GASTON, J., in *Clary* v. *Clary*, 2 Ired., 78, it has been the settled law in this State, that one who has opportunities of knowing and observing a person whose sanity is disputed, may, whether expert or not, give an opinion, based on such knowledge or information, as to his sanity or insanity.   *Horah* v. *Knox*, 87 N. C., 483, and other cases. Experts alone can give an opinion upon facts shown by others, assuming them to be true.   *State* v. *Bowman*, 78 N. C., 509.

Of the twelve instructions prayed, all but five were given in form or substance, and one of these was refused, because there was no evidence to which it was pertinent.

The fifth is embodied in the eighth, and is in these words :

"If the jury believe that the prisoner was a '*dipsomaniac*,' and by reason of the influence of such disease, became so drunk as to become unconscious of his acts, and the act was done while in this condition, then the presumption of malice would be rebutted, and the prisoner would be guilty of manslaughter only.

The remaining two refused instructions, the 11th and 12th, are to the effect, that if, upon the evidence, the minds of the jury are left in doubt as to the sanity of the prisoner, or of his malicious intent in taking the life of the deceased, it should be resolved in his favor, leading, in one instance, to an acquittal; in the other, to the reduction of the grade of the offence to manslaughter.

The charge to the jury was full and explicit, meeting the different aspects of the testimony, as far as we can see from the meagre statements sent up, and we deem it necessary to reproduce only so much of it, as is pertinent to the matters presented in the appeal.

The jury were directed, that a presumption in favor of innocence prevailed, until overcome by evidence of the truth of the criminal charge, and this must be such as to remove all reasonable doubt from the mind.

That when such proof of the homicide is presented, matters in excuse or mitigation must appear, or be shown, not beyond a reasonable doubt, but to the satisfaction of the jury. The prisoner admitting the killing by means of a shot from a pistol, that instrument, thus used, is a deadly weapon, and the law implies malice, unless its absence is made to appear, and this must be to the satisfaction of the jury.

The prisoner, to be responsible for his act, must have legal capacity at the time to distinguish between good and evil, and to know what he was doing, to comprehend his relations towards others, the nature of his act, and a consciousness of wrong. In the inquiry as to the prisoner's men-

tal condition he is assumed to be sane, that is, to have the degree of mind and reason required to constitute criminal responsibility for his acts, but he may prove the want of such legal capacity by evidence of the presence of insanity.

The law recognizes the existence of a form of diseased mind known as "*delirium tremens,*" induced by the excessive use of stimulating drink, and if the homicide was committed while the prisoner was laboring under it to a degree that dethroned reason, the act would be excused, although the diseased condition was temporary. Some forms of insanity, when shown to exist, are presumed to continue; but this does not apply to *delirium tremens*, brought on by one's own procurement, and passing away with the removal of its exciting cause. The law recognizes a chronic insanity; when produced by alcohol, it assumes a permanent form, and is such as to undermine the reason. This species of diseased mind, when found in a person, is presumed to continue until rebutted, and while existing renders him irresponsible for what would otherwise be criminal.

Voluntary drunkenness does not excuse crime, nor does our law recognize as excusing what is called "*dipsomania,*" or distinguish between an irresistible impulse for intoxicating drinks and a mere inordinate appetite for them, brought on by long continued indulgence.

The measure of criminal responsibility is this: If the prisoner at the time of the homicidal act was in a state of mind to comprehend his relations to others, the nature and criminal character of the act, was conscious that he was doing wrong, he was responsible; otherwise, he was not, and such should be the verdict.

The jury, acquitting the *feme* defendant, rendered a verdict of guilty against the appellant Potts.

We think the law was fairly laid down, and as favorable to the prisoner as he could ask. Indeed, it would seem in one particular, more so. The charge appears to admit of a

STATE *v.* POTTS.

construction that puts upon the State the proof of sanity, when it becomes a matter of controversy, though it need not be such as to remove all reasonable doubt, but only sufficient to satisfy the minds of the jury. This burden, with this measure of proof, rests, however, upon the accused, according to the repeated adjudications of the Court. *State* v. *Brittain*, 89 N. C., 481; *State* v. *Payne*, 86 N. C., 609.

The charge is strictly in accordance with *State* v. *Haywood*, Phil., 376. We find no authority in support of the proposition contained in the prisoner's eighth instruction, that the prisoner's drunken condition, while not absolving him from all guilt, might repel the malice and reduce his crime to a lower grade, though earnestly pressed in the argument on his behalf. The test of accountability for crime is the ability of the accused to distinguish right from wrong, and that in doing a criminal act he is doing wrong. This is settled in *State* v. *Haywood, supra.*

We have not allowed, as exempting from the consequences of crime, what is called moral insanity; that is, an alleged uncontrollable impulse to commit an act, with the mental faculties in full force, to comprehend its criminality and wrong. *State* v. *Brandon*, 8 Jones, 463. Nor can we entertain, as a defence, the insatiable thirst, intensified by long indulgence, which is denominated dipsomania—a word requiring an explanation of its meaning to plain men, such as are usually found upon a jury. *State* v. *John*, 8 Ired., 330; *State* v. *Sewell*, 3 Jones, 245.

Upon a review of the defences, we find none sufficient to interpose between the prisoner and the penalty he has incurred in taking the life of a fellow-man.

No error. Affirmed.