PRESTON L. TAYLOR v. TALLAHASSEE POWER COMPANY.

(Filed 28 November, 1917.)

1. **Master and Servant—Employer and Employee—Negligence—Safe Place to Work.**

    The duty of the master to furnish his servant a reasonably safe place to work cannot be delegated by him to another, so as to escape liability for not performing it; and a failure to exercise due care in performing this duty is negligence, and actionable, if the proximate cause of an injury to the servant.

2. **Same—Appeal and Error—Evidence—Harmless Error—Negligence.**

    Where the evidence, in an action by the servant to recover damages of the master for a personal injury, is that the servant, in the performance of his work, went upon an elevator frame to nail braces thereon, with insufficient standing-room for the purpose; that the elevator was not usually run on such occasions, but, while he was in the proper position necessary to do the work, it was operated, without warning, by an inexperienced employee, struck him on the head and caused the injury complained of, it was sufficient to be submitted to the jury upon the issue of defendant's actionable negligence.

3. **Same—Changed Conditions.**

    Where the evidence tends to show that the plaintiff received the personal injury complained of by the negligent running of defendant's elevator, on

the occasion, contrary to custom in such instances, testimony that another employee thereafter, on that day, had done the same kind of work, when the elevator was not running, at his request, is not objectionable, on the principle applying to alterations of machinery, or appliances, made by the master after an injury has been inflicted.

**4. Evidence—Damages—Expert Evidence.**

Where there is evidence that an employee's injury was proximately caused by the employer's negligence, it may be properly shown, by the opinion of a medical expert, based upon relevant facts, if found by the jury, that the injury was of a permanent character, upon the issue of damages.

**5. Instructions—Exceptions and Objections—Appeal and Error.**

Exceptions to a part of the charge, though erroneous when considered as detached from other relative parts thereof, will not be held for reversible error, when the charge, considered as a whole, correctly states the principles of law applicable to the issue.

CIVIL ACTION, tried before *Webb, J.,* and a jury, at July Term, 1917, of CLEVELAND.

The action was brought to recover damages for injuries alleged to have been received by the negligence of the defendant. The plaintiff was employed as a carpenter by the defendant. The evidence was somewhat conflicting, and it will better disclose the questions at issue to state what it tended to prove as contended by the respective parties.

This is plaintiff's version of it, or that which he contended should be accepted by the jury:

"The plaintiff, under the direction of defendant's foreman, went upon the elevator frame belonging to the defendant, and in which the defendant operated an elevator for the purpose of carrying brick and mortar for use in the construction of the power-house it was building, to nail certain braces thereon which had become loosened or broken, and in performing said work in the manner he had theretofore been instructed to do, and while engaged in knocking off one of the broken pieces preparatory to nailing on a new piece, and while standing on a narrow piece of scantling only 2 inches wide, a distance of 20 to 30 feet from the ground, was stricken on the back of the head by a rapidly descending elevator, knocked unconscious, fell upon a wheelbarrow on the ground loaded with brick, and sustained injuries which were serious and permanent.

"The evidence further shows that the plaintiff had been sent upon this elevator frame previous to this occasion to make similar repairs, and that the defendant stopped the elevator while the plaintiff was engaged in the work and in this dangerous position, and the plaintiff performed the work in safety. Instead of providing a platform for plaintiff to stand upon, which the defendant's foreman admitted could

have been done, the defendant required plaintiff to stand upon a scantling 2 x 6, which was turned up edgeways, and make the repairs, and upon this occasion failed to stop the elevator, but permitted it to descend upon the plaintiff without any warning of its approach. The elevator weighed about 1,500 pounds. The defendant operated its ·elevator by means of a wire cable and a hoister engine, and at this time had an inexperienced and incompetent negro for flagman, who had just gone on duty that day, and there was also evidence tending to prove that the man who was in charge of the engine was a new man and without experience. There was a space of only 5 inches between the scantling on which the plaintiff was standing and the outside edge of the elevator, and plaintiff testified that at the time he was injured he had his arm around one of the 4 x 4 inch posts of the elevator frame and was standing on a piece of plank 2 inches thick by 6 inches in width, and was straightening the nails with his left hand. · His head was on the inside, and this was necessary for he had to have 'somewhere to hold and some way to see the nails,' hence it was impossible for any one to stand on this piece of timber and make the repairs while the elevator was passing without being stricken by it, and previously, as plaintiff testified, the defendant had had the elevator stopped and plaintiff notified of its approach, and he would hold to one of the posts and swing his body out of the way and let the elevator pass."

The defendant takes issue with the plaintiff, and contends that no such inferences of fact as those above detailed should be drawn by the jury, but that the evidence shows rather that the following facts should be deduced by them:

"The plaintiff had a safe place in which to work; he was sent up on the outside of the elevator shaft, and there was no use or occasion whatever for him to put his body, or any part of it, on the inside of the shaft, as all the work being done was on the outside; that he had a good, sound piece of strong bracing to stand upon, and there was at least 9 inches between the bracing and the edge of the elevator as it came down. The plaintiff had done similar work on the same elevator on former occasions, and had even assisted in building the elevator shaft, and hence knew all about the structure, and knew that the elevator was running at the time he was sent up to make the repairs; that if the plaintiff put his head on the inside of the elevator, he did so of his own volition, and he, by doing so, contributed to his own injury. The defendant did not know, and had no reason to believe, that the plaintiff was going to put his head or any other part of his body on the inside of the elevator shaft while doing the work. If the plaintiff had done the work carefully and had taken due precaution for his safety, he would not have been hurt; and, in truth and in fact, the plaintiff was not hit by the ele-

vator, which made it practically impossible for him to have been in the position as he alleges. The plaintiff carelessly and negligently took hold of one of the broken braces—one of the very pieces he had been sent up to repair—and swung his weight on same, which caused his fall and injury."

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

3. What damages, if any, is plaintiff entitled to recover? Answer: $5,000.

Judgment was entered thereon, and defendant appealed.

*Ryburn & Hoey for plaintiff.*
*O. Max Gardner and R. L. Smith for defendant.*

WALKER, J., after stating the case: We have stated the contentions of the two parties as to the nature of the evidence and what it tends to prove almost in their own language. The jury have passed upon the different views, and have adopted that of the plaintiff in all its essential features and under a carefully considered charge of the court which covered the case completely in every aspect of it. The exceptions are few and, we think, untenable.

The question asked the witness, Mr. Warren, as to whether he had been ordered to fix the elevator during the afternoon of the day on which the plaintiff was injured, and whether the elevator had been stopped while he was working there, if incompetent, was entirely harmless. The witness stated that he had received such an order, and that the defendant had promised him to stop the elevator while he was at work, and that he did the work without being hurt.

It required no proof to show that if the elevator was not moving it could not injure him, so that in the end his testimony merely tended to prove a self-evident fact. It does not fall within that class of cases where some alteration of machinery or appliance is made to prevent the infliction of an injury. The evidence has some tendency to show that the elevator caused the injury to the plaintiff, and that he had the right to believe that it would not be lowered while he was at work, and also that it was moved by a new and inexperienced operator. There was no change in the elevator and no allegation that it was inherently defective. The only question was whether or not it was the elevator that struck the plaintiff and caused his injuries. The duty to furnish a reasonably safe place for the employee to do his work is a primary one and cannot

be delegated, and a failure to exercise due care in performing this duty is negligence, which becomes actionable if it is the proximate cause of an injury. *Marks v. Cotton Mill,* 135 N. C., 287. If the defendant allowed it to descend while plaintiff was underneath, and after he had been induced to believe by previous conduct that it would not be moved, and he was thereby injured, the negligence is clear, and it can make no difference therefore whether they stopped it that afternoon or not, as it would not affect the question of negligence which is apparent from the lowering of the elevator on the plaintiff's head while he was at work, contrary to the custom. *Steel v. Grant,* 166 N. C., 635, directly supports this view.

It was held in *Keating v. Hewatt,* 99 N. E. (Mass.), 479, that an employer is responsible for injury to an employee resulting from the foreman's negligent failure to protect the employee against injury at a machine after an assurance, express or implied, that it would not be moved while he was working at it, and that it could be found by the jury that the injury was due solely to the negligent failure of the foreman to secure this promised protection after he had exposed the plaintiff to danger. For such negligence of the foreman the employer is responsible. There would seem to be no doubt as to the principle that if an employer orders his employee to proceed with his work, assuring him of its safety and promising to protect him against a danger which by due care can be avoided, and the employer fails to keep the promise, so that his employee, who relied upon it, is injured without contributory negligence on his part, the latter may recover if injury proximately results.

We have not considered the proposition whether, regardless of any custom or promise to protect the plaintiff from injury while mending the elevator frame, it was of itself negligence to move the elevator while he was there engaged in performing the duty assigned to him, as we do not deem it necessary to do so in view of what has already been said.

The hypothetical questions put to the experts were based upon sufficient evidence of the facts they recited and were competent and relevant to show that the injury was of a permanent nature. *Summerlin v. R. R. Co.,* 133 N. C., 550; *S. v. Bowman,* 78 N. C., 509; *Perkins v. R. R. Co.,* 44 N. H., 223.

The case of *Parrish v. R. R. Co.,* 146 N. C., 125, is directly in point. We there said: "It was necessarily assumed by the very form of the question that the jury might find that whatever injury the plaintiff had suffered was *directly* caused by the fall, and the witness was called upon to state what the physical conditions produced by the fall indicated to his trained and experienced mind as a medical practitioner. We think the evidence comes strictly within the rule admitting expert testimony,

or that which is given by a witness having special or peculiar knowledge and skill in the particular calling to which the injury relates, and the competency of the question, as predicated on the hypothetical facts stated, is sustained by the best considered authorities," citing *Logan v. Weltmer,* 180 Mo., 322; *Stouter v. R. R. Co.,* 127 N. Y., 66.

There was no dispute as to the witness, who was a physician, being an expert, and his opinion as to the permanence of the injury could be taken. Besides, the injury was so severe in character that it hardly required expert testimony to show that it would permanently disable the plaintiff.

The exceptions to the charge are without any merit. It is not permissible to select a detached portion of the charge and assign it as error, unless it contains a distinct and independent proposition in itself which is not explained or qualified by the other parts, but the charge must be construed as an entirety; and so construed, we find no error in it, even if the parts selected by the defendant for his exceptions were erroneous, without reference to what preceded or followed them. It is thoroughly well settled that we must look at the whole charge when construing it for the purpose of ascertaining its meaning. *S. v. Exum,* 138 N. C., 600; *Kornegay v. R. R. Co.,* 154 N. C., 389.

The case has been tried according to correct legal principles applicable to it, and the verdict cannot be disturbed.

No error.