J. W. SHAW v. HIGHLAND PARK MANUFACTURING COMPANY.*

(Filed 4 December, 1907).

1. **Principal and Agent—Respondeat Superior—Employer and Employee—Safe Appliances—Help—Negligence—Question for Jury.**

   In an action to recover damages for injuries sustained while in defendant's employment in directing the tearing down of a cloth press in defendant's mill, the evidence showed that plaintiff was directed by defendant's superintendent to move heavy parts of the press, weighing some five thousand pounds, to another part of the mill, the superintendent being present and overlooking the work when it was being done; plaintiff told the superintendent that the appliances being used were too small and that he wanted heavy ones, and the superintendent said go ahead and use those furnished, as they were all right; that a part of the appliances were out of repair, which was known to the superintendent; that the plaintiff was experienced in this kind of work, had been working for defendant for some years, and had theretofore used heavier appliances for work of this character; that plaintiff complained of having insufficient help, and the superintendent replied that he knew the help was worthless: *Held*, (1) the defendant was responsible for the acts of its superintendent; (2) the defendant failed in its legal duty to furnish safe appliances for the work and adequate help to do it; (3) the evidence was sufficient to go to the jury upon the question as to whether the negligent failure to furnish sufficient appliances and help was the cause of defendant's injury. (*Stewart v. Carpet Co.*, 138 N. C., 60, cited and distinguished).

2. **Evidence—Negligence—Safe Appliances—Explanation of Operation.**

   It was competent for the plaintiff, experienced in the work, to explain the use of the machinery he had requested for the work

WALKER, J., did not sit.

he was employed to do, and was refused, as a connection between the negligence and the injury he had received, owing to the unsafe character of the appliances he was instructed to use.

3. **Evidence, Expert—Matter of Fact—Causal Connection—Question for Jury.**

It is competent for the jury to consider injury to plaintiff's eyesight as an element of damage, a causal connection between the injury received and the subsequent paralysis, upon testimony of plaintiff and without expert evidence: "The muscles and tendons were torn loose in my right side, and my arm was affected—paralyzed, to a certain extent. It is still dead and numb. It also affected my eyes; they are crossed and I see two objects. I could see perfectly good before I sustained the injury; since then and to the present time I cannot see at all hardly."

CIVIL ACTION, tried before *Ward, J.;* and a jury, at June Term, 1907, of the Superior Court of MECKLENBURG County.

This was a civil action, instituted by the plaintiff to recover damages for injuries sustained while in the employment of the defendant on 18 May, 1905, plaintiff being engaged at the time in directing the work of tearing down a cloth press in defendant's mill, preparatory to moving it to another part of the building. The cause was tried at June Term of the Superior Court of Mecklenburg County by *Ward, J.,* and a jury. The court submitted these issues:

1. "Was the plaintiff injured by the negligence of the defendant, as alleged in the complaint?" A. "Yes."

2. "Did the plaintiff, by his own negligence, contribute to his own injuries?" A. "No."

3. "What damages is the plaintiff entitled to recover?" A. "Five thousand dollars."

From the judgment rendered defendant appealed.

*McNinch & Kirkpatrick, R. S. Hutchison* and *Burwell & Cansler* for plaintiff.

*Tillett & Guthrie* for defendant.

BROWN, J. The matter involved in this appeal was before this Court at a former term, and constitutes the second cause

of action, reported in 143 N. C., p. 134. That opinion is referred to for a general statement of the case. The jury having found the issue of contributory negligence against the defendant, and there being no error committed by the court upon the trial of that issue pointed out to us, that question may be considered settled.

The learned counsel for defendant contends now that the plaintiff is not entitled to recover in any aspect of the case, (a) because there is no evidence that the defendant was guilty of negligence in failing to furnish two chainblocks and tackle or other proper appliances; (b) there is no evidence that the failure to furnish sufficient hands caused the injury; (c) the defendant's negligence was in no sense the proximate cause of the plaintiff's injury.

We will not consider in detail the numerous exceptions for failure to give defendant's prayers for instruction on the issue of negligence, as in the view we take of the case it is needless to do so.

His Honor might well have instructed the jury that, if they believed the evidence in the case, the defendant was guilty of negligence in failing to furnish the plaintiff with sufficient and proper tools and appliances reasonably necessary for the accomplishment of the work the plaintiff was commanded to do, and also for failure to furnish sufficient assistants reasonably necessary to help in performing it. The entire evidence upon this issue is embraced by the testimony of the plaintiff himself, and that tends to prove that plaintiff was ordered by Superintendent Constable to move the bedplate and plunger, weighing some five thousand pounds, to another part of the mill, and that Constable was present, overlooking the manner in which the work was done. Plaintiff told Constable that he needed a two-ton chainblock, but Constable said he could not afford to hire it, as it would cost him a dollar a day and it would take two weeks to finish the job, and that the mill was not making any money and the plaintiff would have to

make out with the two small chainblocks. The plaintiff pro-
tested, stating that the small chainblocks were too little, but
was told by Constable to go ahead and use them anyway.
Plaintiff again told Constable that he thought they were too
small and he wanted a heavier one, but was again instructed
by Constable to go ahead and use them, as they were all right.

When plaintiff went to use these chainblocks he found that
one of them was defective, or out of repair, so that he could
not use it.

Both Constable and Johnson, the general manager of the
mill, knew at the time that this chainblock was out of repair,
and that plaintiff could, therefore, only use one of the two
chainblocks in tearing down the press.

The evidence tends to prove that plaintiff had large experi-
ence in moving heavy machinery and knew what was neces-
sary; that he had been working for defendant some ten years
and had used a two-ton chainblock frequently in unloading
heavy machinery, and that such chainblock is nearly double
the size of the chainblock used on this occasion.

The evidence shows that insufficient help was furnished
(one man and three inexperienced colored boys) and, upon
plaintiff's protesting that such help was insufficient, Constable
said he knew the three boys were not "worth a damn," but
that they were all he had, and he directed plaintiff to go
ahead, and promised to furnish more help, which he failed
to do.

Upon this uncontradicted evidence his Honor would have
been justified in charging the jury that, if believed to be true,
it proved that the defendant's superintendent had been un-
deniably negligent in his duty to plaintiff.

The defendant failed to furnish appliances proper and
necessary for such work; it furnished defective appliances
and such as were insufficient in size and number. It failed
to furnish sufficient assistants, although repeatedly demanded
by plaintiff, and three of those furnished were inexperienced

and unsuitable for that kind of work. The uncontradicted declarations of the superintendent himself prove that the appliances and help demanded by plaintiff were necessary for the safe performance of the work, and that those furnished were utterly insufficient. It is immaterial that the superintendent was a competent one.

Those entrusting authority to control others are held responsible for the manner of its exercise; if abused, those conferring it are held responsible for its abuse. *Tanner v. Lumber Co.,* 140 N. C., 475; *Mason v. Machine Works,* 28 Fed., 228.

We scarcely deem it necessary to cite authority to sustain our view that the defendant fell far short of its legal duty to plaintiff, but the controlling principles are to be found in *Phillips v. Iron Co.,* at this term, where some of the precedents in our own reports are cited. 2 Labatt, secs. 572, 573; *Lamb v. Littman,* 128 N. C., 361; *Means v. Railroad,* 124 N. C., 574; *Fleke v. Railroad,* 53 N. Y., 549; *Mason v. Machine Co., supra; Railroad v. Fort,* 17 Wallace, 553; *Railway v. Ross,* 112 U. S., 377.

With due deference for the learned counsel for defendant, we think *Stewart v. Carpet Co.,* 138 N. C., 60, relied on by them, has but little bearing on this controversy. In that case the negligence charged was not that the master had altogether failed to furnish an elevator, or that the one furnished was out of repair, but that the elevator which he had furnished was lacking in certain safety appliances in general use. Hence the Court held that, in order to convict the defendant of the negligence charged, the plaintiff must offer evidence tending to show that the elevators in general use were equipped with the safety appliances which this particular one lacked.

No complaint is made of the design and construction of the chainblocks furnished the plaintiff, but the charge is that those furnished were insufficient for the work in hand, be-

cause one was broken and the other too small.    As was tersely said by the learned counsel for the plaintiff, Mr. Cansler, "The master is just as culpable in furnishing appliances sufficient in *quality,* but deficient in *quantity,* as he is for furnishing those sufficient in *quantity,* but deficient in *quality."*

It is contended, again, that the failure to furnish proper chainblocks and assistants was not the proximate cause of the injury and, therefore, the negligence is not actionable.    The *Covington case,* 138 N. C., 344, relied upon by defendant, differs materially from this.    There, the case was made to turn upon the contributory negligence of the defendant. Here, that defense is eliminated by the finding of the jury. We think his Honor properly submitted the question to the jury as to whether the negligent failure to furnish sufficient appliances and help was the cause of plaintiff's injury.    This is a deduction to be drawn by the jury from the facts in evidence, and the evidence abundantly supports the conclusion they reached.

His Honor properly permitted plaintiff to testify what he would have done with the two-ton chainblock, and how he would have suspended the bedplate by means of it, and whether under such conditions it was possible for the bedplate to have fallen on him.    These statements of the witness were competent to explain the connection between the alleged negligence and the injury.    Before the jury can safely draw any inference from the lack of such machinery, they should understand its operation.    Certainly, the plaintiff demonstrated that he was fully competent to explain it.

The defendant excepted to the charge of the court permitting the jury to consider injury to plaintiff's eyesight as an element of damage, upon the ground that there is no evidence to support such claim.    Upon this subject the plaintiff testified: "The muscles and tendons were torn loose in my side, and my arm was affected—paralyzed, to a certain extent; it is still dead and numb.    It also affected my eyes.    My eyes are

crossed; I see two objects. I could see perfectly good before I sustained the injury. Immediately after the injury, and from that time up to the present, I cannot see at all hardly."

It may be that plaintiff is not an expert on diseases of the eye, but he is a competent witness to testify to a fact. If the jury believed that his eyesight was perfectly normal before the injury, and that immediately after the injury he could not see "at all hardly," they might well refer this misfortune to the injury received, and find a causal connection between the two, there being no other apparent cause. The injury to the sight, following almost instantly upon the bodily injury, differentiates this case from those cited by defendant, where the disease was not developed until months afterwards.

The case of *Proulx v. Bay City*, 107 N. W., 273, is very much in point. The plaintiff fell upon the sidewalk and sustained physical injuries, consisting of a bruise to the knee and the running of a sliver into her left hand. Some days after this accident, paralysis in the left side, pains in the back, difficulty of articulation and trouble with the vision appeared.

In holding that the question whether the injuries were the direct cause of the subsequent ailments was for the jury, the Michigan Supreme Court said: "We think it was so clearly a question of fact for the jury as to whether the physical injury was the direct cause of the paralysis and other symptoms as not to require discussion." In that case there was no expert or opinion evidence introduced. The matter was left to the jury to say, from the facts testified to, as to whether there was any causal connection between the injury received and the subsequent paralysis. See, also, *Hirte v. Railway*, 106 N. W., 1068; *Adcock v. Navigation Co.*, 77 Pac., 78.; *Lindeman v. Railroad*, 74 N. Y. Sup.; *Selman v. Wheele*, 54 Atl., 512; *Wright v. City*, 60 Wis., 119.

Upon a review of the whole record, we find

No Error.