H. K. HAMILTON, ADMINISTRATOR OF McCOY HAMILTON, v. HINES BROTHERS LUMBER COMPANY.

(Filed 9 November, 1911.)

1. Railroads—Master and Servant—"Flying Switch"—Negligence— Evidence—Questions for Jury.

When it appears that plaintiff's intestate, in an action for damages against a railroad company for his negligent killing, was engaged within the scope of his employment in uncoupling cars from which other cars were being switched upon a siding, and that while the cars were moving he had placed himself on the front of a car for the purpose of uncoupling others from it, and was seen in this position by a witness, and a moment after he

had disappeared, having fallen between the cars, to his injury and consequent death, evidence tending to show that at the time of the injury defendant's engineer was making what is known as a "flying switch," and that this method of switching cars is not a safe and proper one to pursue, is sufficient upon the defendant's negligence to be submitted to the jury on that issue, and a motion as of nonsuit should not be sustained.

### 2. Nonsuit—Evidence, How Considered.

Upon defendant's motion to nonsuit upon the evidence, the court will not select a portion of a witness's statement more favorable to the defendant, for the evidence making for plaintiff's claim must be taken as true and interpreted in the light most favorable to him, and if therefrom "two minds could reasonably draw different conclusions from the evidence, and one of them would be favorable to plaintiff, the matter is for the jury."

### 3. Railroads—Master and Servant—Fellow-servant Act—Logging Roads—Negligence—"Ways"—Interpretation of Statutes.

The Fellow-servant Law, Revisal, sec. 2646, applies to logging roads operated by the agency of steam; but the right of action given an employee injured by reason of defective "machinery, ways, or appliances," by the use of the word "ways" refers in that particular to roadways and objective conditions relevant to the inquiry which it is the duty of the employer to provide; and not, as in this case, where the alleged negligent killing of an employee was by reason of the negligence of the defendant's engineer in making a flying switch, a method testified to as not being a safe and proper one.

### 4. Railroads—"Flying Switch"—Master and Servant—"Assumption of Risks"—Continuing to Work—Contributory Negligence.

Where it is shown that plaintiff's intestate was killed while acting under the direction of defendant's engineer in making a "flying switch," which was not a safe and proper one to pursue, the doctrine of assumption of risks is not applicable in its technical meaning; and the effect of the intestate having worked on in the presence of dangerous conditions which are known and observed must be considered on the question whether the attendant dangers were so obvious that a man of ordinary prudence and acting with such prudence should have quit the employment rather than incur them.

### 5. Railroads—"Flying Switch"—Master and Servant—Continuing to Work—Contributory Negligence—Disobedience of Orders—Evidence.

When, in an action against a railroad company for damages for the negligent killing of plaintiff's intestate, a brakeman and

switchman, while making a "flying switch," the defense is relied on that the intestate continued to do the work when the danger of thus switching was obvious and apparent to him, it is competent for the plaintiff to show that the engineer sent some one to help the intestate perform the services then required of him, as relevant to the inquiry as to whether the intestate was acting with the knowledge of the engineer as vice principal, or acting under his orders; or whether the intestate had reasonable apprehension of being discharged if he disobeyed them.

APPEAL from *Peebles, J.,* at March Term, 1911, of LENOIR.

Civil action to recover for alleged negligent killing of intestate by defendant. At the close of plaintiff's evidence, on motion, the court ordered a nonsuit, and plaintiff excepted and appealed.

*G. V. Cowper and Y. T. Ormond for plaintiff.*
*Rouse & Land, Loftin & Dawson, and McLean, Varser & McLean for defendant.*

HOKE, J. There was evidence tending to show that, in September, 1910, the intestate, an employee, was run over and killed by a train of defendant company; that, at the time of the occurrence, the intestate, a youth between eighteen and nineteen years of age, was acting as fireman, he and the engineer composing the train crew, the duties of intestate being to fire the engine, couple and uncouple the cars, and change the switches; that the train in question consisted of an engine and twelve or thirteen logging trucks or cars, two of them, several cars back from the end, being loaded with a barrel of oil and feedstuff, and was backing at the time with the purpose of cutting out these loaded cars and leaving the empties on a siding near at hand; that with this end in view, and while the train was in motion, approaching the switch, the intestate left the engine and went along the skeleton cars of the train and to the forward end of the loaded cars and took a position to uncouple the empty cars, in front. About the same time, one Lonnie Emerson, a young man who was also on the engine, but without regular duties, so far as the testimony shows, was requested by the engineer to go forward and assist the intestate by uncoupling

the empties, which were just behind the loaded cars, the intent being for intestate to change the switch, throw the empty cars in front and rear onto the siding, and allow the loaded cars to remain upon the main line; that when Lonnie Emerson had reached his position, he looked off for a moment, and when he looked back the intestate, who had been sitting, as stated, on the front part of the loaded cars, where they were to be uncoupled, had disappeared; he had fallen between the cars and two of them had run over him, causing injuries from which he died in about three-quarters of an hour. There was also evidence tending to show that this plan was what is termed a flying switch; that it was not a safe and proper way to pursue it cutting out the loaded cars, and was forbidden by the company's rules. Speaking to this question, plaintiff, H. K. Hamilton, intestate's father, on his examination in chief testified as follows:

Q. You have heard the kind of switching that was being done on this road. Will you state from your knowledge as an engineer and from your experience how that work should be done and the proper way to do it?

The Court: He can state what is a safe way and an unsafe way. A. The safe way would be to back your train to the switch and stop and cut off your cars.

Q. Can it be done any other way? A. Yes, there are other ways that it is frequently done. Our rule book says you can't make a switch that way.

Q. From your knowledge of this kind of work as an engineer, other than by the usually accepted rules of trainmen doing this kind of work in this part of the country, is it considered a safe and proper way to uncouple cars when moving down grade without stopping?

Q. Have you had experience in running log trains? A. Yes, I have handled quite a bit. I will answer that it is not safe to make a flying switch anywhere.

Q. What kind of switching is that which has been described? A. That is a flying switch when you have a car to shift without stopping the train, or the train is in action all the time.

It is true, the witness, in his cross-examination, qualifies this statement to some extent, but, as we have said in a recent case, "We are not at liberty to select the more favorable portions of a witness's statement and act on it for defendant's benefit. We have repeatedly held that, on a motion for nonsuit, the evidence making for plaintiff's claim must be taken as true and interpreted in the light most favorable for him." *Dail v. Taylor,* 151 N. C., 289; *Deppe v. R. R.,* 152 N. C., 80. As the case goes back for a new trial, we do not deem it desirable to make any extended reference to the inferences permissible and arising on the testimony, but, applying the rule well recognized with us, "That if two minds could reasonably draw different conclusions from the evidence, and one of them would be favorable to plaintiff, the matter is for the jury" (*Allen, J.,* in *Harvell v. Lumber Co.,* 154 N. C., 262), we are of opinion that the question of defendant's negligence should be submitted for the jury's decision.

On the conduct of the intestate, while we have held that our statute, known as the Fellow-servant Law, Revisal, sec. 2646, applies to these logging roads, we do not think that the terms of the law, giving a right of action to an employee injured by reason of defective "machinery, ways, or appliances," refer to conditions as now disclosed in the testimony; the term "ways," we think, having reference rather to roadways and objective conditions relevant to the inquiry and which it is the duty of the employer to provide. The negligence, if any, imputable to defendant on the testimony, is by reason of negligent directions given and methods established, by the employer, subjective in their nature and to which the statute on the facts presented was not intended to apply. It is well understood, however, that an employer of labor may be held responsible for directions given or methods established, of the kind indicated, by reason of which an employee is injured, as in *Noble v. Lumber Co.,* 151 N. C., 76; *Shaw v. Manufacturing Co.,* 146 N. C., 235; *Jones v. Warehouse Co.,* 138 N. C., 546, and, where such negligence is established, it is further held, in this jurisdiction, that the doctrine of assumption of risk, in its technical acceptation, is no longer

applicable (*Norris v. Cotton Mills,* 154 N. C., 475; *Tanner v. Lumber Co.,* 140 N. C., 475), but the effect of working on in the presence of conditions which are known and observed must be considered and determined on the question whether the attendant dangers were so obvious that a man of ordinary prudence and acting with such prudence should quit the employment rather than incur them." *Bissell v. Lumber Co.,* 152 N. C., 123; and, on the issues, as to plaintiff's conduct, the fact that the particular service was rendered with the knowledge and approval of the employer or his vice principal or under his express directions, if given; also, the employee's reasonable apprehensions of discharge in case of disobedience, etc., may be circumstances relevant to the inquiry. *Hicks v. Manufacturing Co.,* 138 N. C., 322. In this view, we think the statement of the witness Lonnie Emerson was properly received in evidence, "that the engineer requested the witness to go out on the train and help McCoy." It tended to show that the intestate was doing his work with the knowledge of the engineer, and it was also relevant on the question whether he was not acting under the engineer's orders. Applying the rules as they obtain with us, to the facts in evidence, we are of opinion that there was error in directing a nonsuit, and the order to that effect must be set aside.

Error.