Action for injuries alleged to have been caused by negligence. Plaintiff was employed by defendant and, at the time he was hurt, was instructed by J. D. Spradlin, the supervisor and his superior officer, to load a gondola car with iron rails, which had been twisted and bent in a wreck and were very crooked. Defendant told Spradlin that he would want more help. The situation may be better described in his own words: "I told him I would want more help. I told him I had three men and my boy working with me, and I didn't think I had help enough to load it. He said, `Go and try; do the best you can; it is the engineer's orders.' I went down and tried to load it, but I could not, and got hurt. We were loading up the rail on a slide; that car was about 7 feet high. We had laid some pieces of rail for a slide, and was putting it up that way. The rail was top-heavy. I was in the center of it, and we got it up about 4 feet high, and it turned over on me, and I felt something tear loose. I had hold of the rail. *Page 79 
"Q. Why did something tear loose? A. Because I was holding the rail with all my strength; that is about all. I got hurt, and we laid the rail down on the ground.
"Q. State why you got hurt. A. Because I was trying to hold the rail; it was crooked and the rail was about to turn over in the center — about to fall; both ends were about to fall, and if it fell it would turn over on the men, and I got hurt because I was trying to hold it up in that position" (indicating what he meant).
Plaintiff suffered a rupture, which was progressive in its nature, and resulted in serious and permanent injury. After he was first (96) hurt, Spradlin furnished the help asked for, and he then performed the work assigned to him. Three issues were submitted to the jury as to negligence, contributory negligence, and damages. There was nothing said in the answer, nor was there any issue, as to assumption of risk. The court charged the jury as to the duty of defendant to provide for its employees reasonably safe means and sufficient help to perform his work, and that if it had failed in this duty — the special act of negligence being the failure to furnish necessary or adequate help — and this was the proximate cause of plaintiff's injury, they would answer the first issue "Yes"; and that if plaintiff undertook to do the work, after Spradlin had failed, upon proper application, to give him more help, and that a man of ordinary prudence would not have undertaken the performance of the task under the circumstances, or if plaintiff did not exercise ordinary care in the manner of doing the work, and either act of carelessness proximately caused the injury, they would answer the second issue "Yes," the burden as to the first issue being upon the plaintiff, and as to the second, upon the defendant. There was a verdict for plaintiff, and defendant appealed from the judgment thereon.
After stating the case: The duty of the defendant to supply help sufficient for the safe performance of the work allotted to the plaintiff is not questioned by the appellant, but it is contended that if it failed to do so, the plaintiff was guilty of such negligence in going on with the work, after the refusal to comply with his request, as bars his recovery, it being an act of contributory negligence on his part, which was the proximate cause of the injury to him. We cannot assent to this proposition, except in a qualified sense. The doctrine of assumption of risk is dependent upon the servant's knowledge of the dangers incident to his employment and the ordinary risks he is presumed to know. But extraordinary risks, created by the master's negligence, if *Page 80 
he knows of them, will not defeat a recovery, should he remain in (97) service, unless the danger to which he is exposed thereby is so obvious and imminent that the servant cannot help seeing and understanding it fully, if he uses due care and precaution, and he fails, under the circumstances, to exercise that degree of care for his own safety which is characteristic of the ordinarily prudent man. 26 Cyc., 1196-1203. We consider the rule to have been settled by this Court inPressly v. Yarn Mills, 138 N.C. 410, and subsequent decisions approving it. Justice Hoke, for the Court, in that case, approving what had formerly been decided in Hicks v. Manufacturing Co., gave this clear statement of the rule, as deduced from the authorities: "While the employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective machinery and appliances due to the employer's negligence. These are usually considered as extraordinary risks which the employees do not assume, unless the defect attributable to the employer's negligence is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks. This is, in effect, referring the question of assumption of risk, where the injury is caused by the negligent failure of the employer to furnish a safe and suitable appliance, to the principles of contributory negligence; but it is usual and in most cases desirable to submit this question to the jury on a separate issue as to assumption of risk, as was done in this case. When the matter is for the jury to determine on the evidence, it may be well to submit this question to their consideration on the standard of the prudent man, in terms as indicated above. The charge on the third issue substantially does this, and the language used is sanctioned by the authorities," citing Sims v. Lindsay,122 N.C. 678; Lloyd v. Hanes, 126 N.C. 359; Coley v. R. R.,129 N.C. 407; Marks v. Cotton Mills, 135 N.C. 287.
There is a clearly marked line of divide between assumption of risk and contributory negligence, the former being confined to the ordinary perils of the service, and the servant could not be held by his contract, or upon any other ground, at least, in a technical sense, to have assumed the risk of his master's negligence, as the contractual relation is the other way; the master impliedly undertaking, by the contract (98) of service, to exercise proper care for the servant's safety by selecting reasonably fit and safe tools and appliances, and providing a reasonably safe place and a sufficient and competent force for the performance of the work, and, perhaps, other duties not necessary to be here enumerated. "`He complies with the requirements of the law in this respect if, in the selection of machinery and appliances and the employment of sufficient help, he uses that degree of care which a man *Page 81 
of ordinary prudence would use, having regard to his own safety, if he were supplying them for his own personal use. It is culpable negligence which makes the employer liable, not a mere error of judgment. We believe this is substantially the rule which has been recognized as the correct one and recommended for our guide in all such cases. It measures accurately the duty of the employer and fixes the limit of his responsibility to his employee,' citing Harley v. Mfg. Co., 142 N.Y. 31. So that the liability of the employer to the employee in damages for any injury the latter may receive, while engaged in his work, depends upon whether the employer has been negligent. Avery v. Lumber Co.,146 N.C. 592; Barkley v. Waste Co., 147 N.C. 585." Cotton v. R. R.,149 N.C. 227. If, therefore, the master is culpably negligent and the servant receives an injury which the law will impute to that negligence as its proximate cause, the master will be held liable in damages, because the master's breach of duty was not by any means an ordinary peril of the service within the scope of the contract, but an extraordinary one, for which the master is liable, unless the servant's own negligence contributed to the injury, and is considered to be its proximate cause. If the master, by his own negligence, has brought about a dangerous condition with which the servant is confronted, the obviousness of the danger and the impression the situation would make upon a man of ordinary prudence and discretion with respect to his own safety would determine the servant's measure of duty to himself which the law will require of him under the circumstances, always bearing in mind that as the question of negligence is composed of law and fact, it is difficult, if not impossible, to extract from the authorities a rule so nicely and comprehensively expressed as to fit all cases. There is no such (99) touchstone in the law by which we can try and test the legal quality of any act of negligence, but with the general principle in hand, each case must be decided upon the facts peculiarly its own.
Subject to the Act of 1897, ch. 56 (Revisal, sec. 2646), the servant assumes only the ordinary and incidental risks of the service, those which necessarily and naturally, in the course of things, accompany it, and which excludes the idea of any negligence of the master, and if the master negligently injures him, he must show negligence of the servant in order to defeat a recovery.
In several recent cases this question has been considered favorably to the views herein expressed. Justice Allen said in Norris v. Cotton Mills,154 N.C. 474: "The charge to the jury was, we think, in some respects more favorable to the defendant than it was entitled to, and particularly as to the doctrine of assumption of risk, as the employee never assumes the risk of any injury caused by the failure of the employer *Page 82 
to perform a duty which he cannot delegate, and the duty to provide a reasonably safe place to work is one of them." Hamilton v. Lumber Co.,156 N.C. 519; Pritchett v. R. R., 157 N.C. 88.
It is better for the servant that his case should be decided upon a principle of contributory negligence, as it casts the burden of proof upon the defendant under our law. Rev., sec. 483.
The defendant contended that when the plaintiff's request for more help was refused, and he was directed to go on with the work and do the best he could without it, he should have quit the service and not have exposed himself to the danger which resulted in his injury. This would be a harsh rule to apply in such a case. There are many reasons, some humane, why it should not prevail. The master should be fair and just to his servant. It is best for both that he should be so. The latter is entitled to fair treatment, just compensation, proper facilities for doing his work and reasonable care and protection while engaged in it. The servant is not required to retire from the service or to refuse to go on with his work, unless, as we have said, the danger is (100) obvious, or he knows and appreciates it. He may know of the risk without fully appreciating the danger. Whether such a situation was presented to him at the time of the injury is a question for the jury, to be decided generally upon the rule of the prudent man.
We cannot do better than to reproduce here the carefully expressed views (by Justice Hoke) in Hamilton v. Lumber Co., 156 N.C. at p. 523, as they seem to be specially applicable to the facts of this case:
"On the conduct of the intestate, while we have held that our statute, known as the Fellow-servant Law, Revisal, sec. 2646, applies to these logging roads, we do not think that the terms of the law, giving a right of action to an employee injured by reason of defective `machinery, ways, or appliances,' refer to conditions as now disclosed in the testimony; the term `ways,' we think, having reference rather to roadways and objective conditions relevant to the inquiry and which it is the duty of the employer to provide. The negligence, if any, imputable to defendant on the testimony, is by reason of negligent directions given and methods established, by the employer, subjective in their nature and to which the statute on the facts presented was not intended to apply. It is well understood, however, that an employer of labor may be held responsible for directions given or methods established, of the kind indicated, by reason of which an employee is injured, as in Noble v. Lumber Co., 151 N.C. 76;Shaw v. Mfg. Co., 146 N.C. 235; Jones v. Warehouse Co., 138 N.C. 546, and where such negligence is established, it is further held, in this jurisdiction, that the doctrine of assumption of risk, in its technical acceptation, is no longer applicable *Page 83 
(Norris v. Cotton Mills, 154 N.C. 475; Tanner v. Lumber Co.,140 N.C. 475), but the effect of working on in the presence of conditions which are known and observed must be considered and determined on the question whether the attendant dangers were so obvious that a man of ordinary prudence and acting with such prudence should quit the employment rather than incur them. Bissell v. Lumber Co., 152 N.C. 123; and on the issues, as to plaintiff's conduct, the fact that the particular service was rendered with the knowledge and approval of the employer or his vice principal or under his express directions, (101) if given, also the employee's reasonable apprehensions of discharge in case of disobedience, etc., may be circumstances relevant to the inquiry."
It is as much the duty of the master to exercise care in providing the servant with reasonably safe means and methods of work, such as proper assistance for performing his task, as it is to furnish him a safe place and proper tools and appliances. The one is just as much a primary, absolute, and nondelegable duty as the other. When he entrusts the control of his hands to another, he thereby appoints him in his own place, and is responsible for the proper exercise of the delegated authority, and liable for any abuse of it to the same extent as if he had been personally present and acting in that behalf himself. This principle is well settled. Shaw v.Mfg. Co., 146 N.C. 239; Tanner v. Lumber Co., 140 N.C. 475; Mason v.Machine Works, 28 Fed., 228; R. R. v. Herbert, 116 U.S. 642; Shives v.Cotton Mills, 151 N.C. 290; Pritchett v. R. R., supra; Holton v. LumberCo., 152 N.C. 68.
It may be assumed that the law does not impose on the master any duty to take more care of his servant than the latter should take of himself, their respective obligations in this respect being equal and the same — that is, to be careful and to adjust their conduct to the standard of the ordinarily prudent man. In measuring the extent of this duty, the jury will always consider their situation and opportunities, their comparative ability to know the peril of the service and to realize the attendant danger and any other circumstance shedding light upon the main or principal question of negligence and its proximity to the injury inflicted.
We cannot say, as matter of law, upon the evidence in this case, that the danger of continuing to load the car with the rails upon the slanting skid, without additional help, was such as to bar a recovery. Whether it was so great and obvious that no man of ordinary prudence would have gone on with the work in its presence was properly submitted by the court to the jury, under what we hold to be correct instructions. The charge in every respect seems to have been as favorable to the defendant as the law permitted or it had any right to expect. *Page 84 
(102) The judge would not have been warranted in practically taking the case from the jury by such a peremptory charge upon both of the issues upon negligence as he was requested to give. It was the province of the jury to find the facts, under instructions of the court as to the law. Nor does it make any difference that the work required of the plaintiff was not complicated, but simple in its nature. He was entitled, in any view of it, to a reasonably sufficient squad of hands to help him perform it. In this connection, we may well consider Shaw v. Mfg. Co.,146 N.C. 235, the facts of which are very similar to those in this case. The plaintiff, Shaw, was told to remove a bed-plate and plunger from one part of the defendant's mill to another, and reported to the superintendent that he needed a large chain-block for the purpose. His request was refused, and he was directed to do the work with his two small chain-blocks. He protested that they were too small, and again asked for a larger chain-block, but was told to go ahead and use the small ones anyway. Shaw also applied for more help, but none was supplied. With reference to these facts, this Court, by Justice Brown, said: "The evidence shows (further) that insufficient help was furnished (one man and three inexperienced colored boys), and, upon plaintiff's protesting that such help was insufficient, Constable said he knew the three boys were not `worth a damn,' but that they were all he had, and he directed plaintiff to go ahead, and promised to furnish more help, which he failed to do. Upon this uncontradicted evidence his Honor would have been justified in charging the jury that, if believed to be true, it proved that the defendant's superintendent had been undeniably negligent in his duty to plaintiff." The only difference between the two cases is that in theShaw case the evidence was held to be uncontradicted, while in this case it was disputed, and the court left it to the jury to find the facts, and they found that plaintiff's version was the true one. This assimilates the cases, and they cannot be distinguished upon the ground that in Shaw's case one of the appliances was defective and unusable. The Court lays no particular stress upon that fact. Sufficient help (103) was just as necessary to safeguard the servant as flawless implements. The two cases, in their essential and controlling facts, are substantially alike, and the same rule must govern both.
Defendant submitted many prayers for instructions. Some of them assumed facts as established which were disputed, and others called upon the court to treat the question of negligence as one of law. Those that were proper in form, and applicable to the case, were substantially given. The hypothetical question put to the expert, Dr. Caton, as to the cause of the hernia, while, perhaps, not as full as it might have been, combined substantially all the facts and was sufficiently explicit for him to *Page 85 
give an intelligent and safe opinion. The evidence would justify a finding of those facts by the jury. This is sufficient. Summerlin v. R. R.,133 N.C. 551; S. v. Bowman, 78 N.C. 509; S. v. Cole, 94 N.C. 958; S. v.Wilcox, 132 N.C. 1120.
There are other exceptions which, upon a careful review of them, we do not think require separate discussion. The central and controlling question relates to the conduct of the plaintiff in the presence of a dangerous situation thrust upon him by defendant's negligence, in ignoring his reasonable request for more help to do the work of lifting the heavy rails, which was made more difficult by their twisted condition. Plaintiff, nevertheless, attempted to do the work by the command of the defendant's superintendent and alter ego, Spradlin, who was in authority over him, with power to discharge him for disobedience of the order. The jury did not think the danger was so obvious or menacing that a man of ordinary prudence would not have faced it in the effort to comply with the instruction to go ahead and do the best he could with the help he then had. He was injured seriously in his endeavor to follow Spradlin's direction, and the jury having further found that it was a negligent order and that plaintiff was without fault, the defendant must answer to him in damages for the consequent injury.
The delay in bringing the suit is, by itself, of no legal significance. It was a circumstance for the jury to consider upon the general question, and was explained by the fact that the disease produced by the injury was almost imperceptibly slow in its progress and development.
If the remarks of plaintiff's attorney, in his address to the jury, were improper — though we are not ready to admit it, but (104) rather think they were legitimate — it could not, in our view of the facts, have so seriously affected the rights of appellant as to call for a reversal. There must be prejudice by the offending counsel of one party to his adversary's rights, to induce us to reverse. What counsel said was entirely too mild to hurt, even if it had been not altogether fair in forensic debate, when some latitude must be indulged for the undue heat of argument and the excited zeal of counsel, and sometimes they must give and take, if there is no gross abuse of privilege. S. v.Underwood, 77 N.C. 502; S. v. Bryan, 89 N.C. 531; S. v. Suggs, ibid., 527; Devries v. Phillips, 63 N.C. 53; S. v. Tyson, 133 N.C. 692;R. v. Wette, 68 Tex. 295[68 Tex. 295].
We have given good heed to the able and learned brief and oral argument of the defendant's counsel, Mr. Moore; but after all has been said, and duly considered, we are unable to say that any error in the case has been discovered.
No error. *Page 86 
 Cited: Sasser v. Lumber Co., 165 N.C. 243; Tate v. Mirror Co., ib., 279, 283; Ammons v. Mfg. Co., ib., 452; Lloyd v. R. R., 166 N.C. 33; McAfee v.Mfg. Co., ib., 456; Cochran v. Mills Co., 169 N.C. 61; Brown v. FoundryCo., 170 N.C. 39; De Ligny v. Furniture Co., ib., 202; Wooten v. Holleman,171 N.C. 464; Dunn v. Lumber Co., 172 N.C. 136; Hollifield v. Telephone Co.,ib., 725.