H. W. BATEMAN v. JESS BROOKS and W. M. RITTER LUMBER
COMPANY.

(Filed 8 February, 1933.)

1. **Master and Servant G b—Evidence of negligence in this action against logging road held sufficient to be submitted to jury.**

In an action to recover damages of a steam logging or tram road and its foreman, evidence tending to show that the defendant company failed to repair or use air brakes on its cars and that the plaintiff was injured by slipping and falling between the moving cars while attempting to apply the hand brakes thereon by walking or running between them and using a brake wrench, and that the defendant's foreman and *alter ego* had

directed the plaintiff to apply the brakes in this dangerous manner, *is held* sufficient to be submitted to the jury on the issue of the defendant's actionable negligence, the rules as to contributory negligence and assumption of risk prescribed by C. S., 3467, 3468 applying to the action. C. S., 3470.

**2. Master and Servant G c—Provisions of C. S., 3467, 3468, apply to action against logging road by injured employee.**

The provisions of C. S., 3467, that in actions against a railroad company by an employee thereof contributory negligence shall not bar recovery but shall be considered only in diminution of damages and that no employee shall be held to have been guilty of contributory negligence where the violation of a statute enacted for the safety of employees contributed to the injury or the injury was caused by negligence, and the provisions of C. S., 3468 that no employee shall be held to have assumed risks resulting from the violation of such safety statutes by the employer or from its negligence, apply to an action by an employee of a logging or tram road to recover damages for an injury suffered by him in the performance of his duties. C. S., 3470.

**3. Same—Where rule for safety of employees is constantly violated to employer's knowledge it becomes a dead rule.**

Where a rule promulgated by an employer for the safety of employees is constantly and habitually violated by the employees for a long period of time to the knowledge of the employer or his *alter ego* the rule becomes a dead rule and its violation by an employee may not be set up as contributory negligence in an action by the employee to recover damages for a negligent personal injury.

**4. Evidence K b—Testimony of witness in this case as to effect of hand and air brakes held competent.**

In an action by an employee against a logging or tram road to recover for injuries received by the employee while attempting to apply a hand brake on the cars, the air brakes thereon having become in such state of disrepair as to render them useless, the admission of testimony of witnesses of years of experience and with personal knowledge of the facts as to the operation of hand and air brakes and as to whether the injury could have been avoided had the air brakes been repaired and used, *is held* not to constitute reversible error.

**5. Appeal and Error J e—**

An exception to the admission of incompetent evidence will not ordinarily be considered where evidence of the same import is later admitted without objection.

APPEAL by defendants from *Stack, J.,* and a jury, at April Term, 1932, of MACON. No error.

This is an action for actionable negligence brought by plaintiff against defendants, alleging damage.

The plaintiff was an employee of defendant W. M. Ritter Lumber Company, which was engaged in the general lumber business in Macon County, N. C. In connection with its business it had a large band mill

located at Rainbow Springs, in said county. It owned a standard gauge railroad of some seven miles, which went back into its lands in the woods, to haul lumber to its band mill. It operated over the tracks for the purpose, locomotive engines, trains, and cars. The defendant, Jess Brooks, was defendant Lumber Company's general woods superintendent and train foreman, with the power and authority to hire and discharge hands. He employed the plaintiff to work for the Lumber Company. Before his injury, on 14 July, 1931, he had been working as brakeman some four years. The plaintiff alleged that at the time of his injury "it was the duty of the defendant Jess Brooks and the defendant W. M. Ritter Lumber Company to furnish and provide for the plaintiff in the exercise of reasonable and ordinary care a reasonably safe and suitable place in which to perform the work required of him, and to furnish and provide for the use of the plaintiff while engaged in the performance of his said duties in the course of his said employment, reasonably safe and suitable appliances, ways, means, methods and equipment with which to perform his said duties, and it was likewise the duty of the said defendants, and each of them, to provide the plaintiff with sufficient number of competent colaborers and assistants and with reasonably safe and suitable cars, machinery and equipment with which to do and perform the duties required of him, and also to warn and instruct the plaintiff of any risk or danger incident to the performance of his said work, to the end that the plaintiff might perform his said duties without any unnecessary risk, hazard or danger to his life or limb; but that the said defendants, Jess Brooks and W. M. Ritter Lumber Company, in violation of the aforesaid duties incumbent upon them were negligent upon said occasion, in that defendants did negligently, carelessly and recklessly order and direct this plaintiff on this occasion and at divers other times to go between said railroad cars where same were coupled together and walk and run along the ends of the cross ties projecting from the steel rails of said railroad track in order to apply the brakes to and upon the car then being pulled by a locomotive engine, without providing the plaintiff in the exercise of reasonable and ordinary care suitable equipment, ways or means to apply said brakes with reasonable safety to himself. . . . Defendants ordered and directed the plaintiff to go in between said cars and apply the brakes thereto with a brake wrench, whereupon this plaintiff protested and requested the said defendant to provide other ways and means of applying the brakes to said cars and requested of the said train foreman that he and the defendant company furnish a wheel brake or air brakes for the operation of said cars, and plaintiff alleges that the said defendant negligently refused to provide said wheel brake, air brakes or other ways and means to apply the brakes

to and upon the wheels of said cars. . . . While the plaintiff in obedience to the orders of the defendant, Jess Brooks, was walking or running along said cross ties between said cars for the purpose of applying the brakes thereto, was caught by the wheel of one of said freight cars and was thrown with great force and violence to and upon the track and cross ties and thereby run over, crushed, bruised and mangled by said train, and said train was negligently and carelessly operated and run over the left leg of plaintiff on said occasion, cutting, bruising and breaking the bones of plaintiff's said leg in such a way and manner as to make it necessary for plaintiff's said leg to be amputated about 5 inches above the knee joint.

"That when plaintiff was caught by the wheels of said log car on said occasion he was knocked down and dragged along said track for a distance of 18 feet or more before said train was stopped, and plaintiff here avers that if said train had been properly equipped with air brakes that same could have been stopped before plaintiff's leg was crushed, broken and bruised as aforesaid.

"That sometime prior to plaintiff's aforesaid injuries, the defendant company had its cars and engines equipped with air brakes, but negligently allowed and permitted the air hose on said train to get out of order and use and failed to keep same in proper repair so that the air could be applied to and upon the wheels of said log cars in order that said train might be operated with safety to plaintiff and his coemployees.

"That on the date of the aforesaid injury, plaintiff was a young man 23 years of age, strong, able-bodied, industrious and of good habits, and had been for several years prior thereto regularly employed at good wages and on the date of said injury was receiving the sum of $3.25 per day.

"That the aforesaid careless, negligent, wilful and reckless acts and conduct and omissions of the defendants, and each of them contributed to and were the direct and proximate, concurrent and joint cause of the plaintiff's said injury and suffering, all to his great damage in the sum of $50,000."

The defendants denied the material allegations of the complaint of plaintiff as to negligence, and set up the plea of contributory negligence.

"That if the plaintiff was injured by reason of any negligence on the part of these defendants or either of them, which is expressly denied, he contributed to his injury by his own negligence in negligently and carelessly violating orders and stepping across the railroad iron when the train was moving only two or three miles an hour, and but for his negligence no injury would have occurred and such contributory negligence on his part is expressly pleaded in bar of any recovery in this cause."

BATEMAN *v.* BROOKS.

The issues submitted to the jury and their answers thereto and judgment on the verdict were as follows:

"This cause coming on to be heard and same being heard at this the April Term, 1932, of Macon Superior Court, before the Honorable A. M. Stack, judge presiding, and a jury, upon the following issues:

"1. Was the plaintiff injured by the negligence of the defendants as alleged in the complaint?

"2. Did the plaintiff by his own negligence contribute to his injuries as alleged in the answer?

"3. What damage, if any, is the plaintiff entitled to recover?

"And the jury having answered the first of said issues Yes and the second of said issues No, and the third of said issues $9,000;

"It is now, upon motion of Edwards & Leatherwood, attorneys for the plaintiff, considered, ordered, adjudged and decreed that the plaintiff H. W. Bateman have and recover judgment against the defendants, Jess Brooks and W. M. Ritter Lumber Company, in the sum of $9,000, together with the costs of this action to be taxed by the clerk of this court."

The defendants excepted and assigned error to the judgment as signed and made numerous other exceptions and assignments of error and appealed to the Supreme Court. The material evidence necessary for a decision of the case will be set forth in the opinion.

*Edwards & Leatherwood for plaintiffs.*
*Alley & Alley and Johnston & Horner for defendants.*

CLARKSON, J. The defendant at the close of plaintiff's evidence and at the close of all the evidence made motions for judgment as in case of nonsuit. C. S., 567. The court below overruled these motions and in this we can see no error.

We think the evidence of plaintiff was sufficient to be submitted to a jury and fully warranted the verdict and judgment. The action is for actionable negligence. We think the evidence supports fully the allegations in the complaint. The defendant denied negligence and set up the plea of contributory negligence. The plaintiff was an employee, a brakeman for the defendant Ritter Lumber Company's railroad, and had been in the employ of defendant Lumber Company for four years when injured, on 14 July, 1931. At the time of the injury he was 23 years old, weighed 190 pounds, earning $3.25 a day, "was healthy and stout as a mule." The train ran over his left leg and it had to be amputated about three hours after the injury, about five inches above the knee joint and he is a cripple for life. The train he was working on was

standard gauge. The Lumber Company had a large band mill at Rainbow Springs, and the railroad ran about 7 miles into the woods to get timber from the lands of defendant Lumber Company to haul it to the band mill.

C. S., 3467, is as follows: "In all actions hereafter brought against any common carrier by railroad to recover damages for personal injury to an employee, or where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: *Provided, however,* that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

C. S., 3468: "In any action brought against any common carrier under or by virtue of any of the provisions of this article to recover damages for injuries to, or the death of, any of its employees, such employee shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee or the death or injury was caused by negligence."

C. S., 3470: "The provisions in this article relating to liability for damages shall also apply to logging roads and tramroads."

In *Stewart v. Lumber Co.,* 193 N. C., at p. 141, the following observation is made: "But since the act of 1919, chap. 275, C. S., 3470, same applies with equal force to logging roads and tramroads." *Lilley v. Cooperage Co.,* 194 N. C., at p. 255; *Moore v. Rawls,* 196 N. C., at p. 129; *Sampson v. Jackson Bros.,* 203 N. C., at p. 417.

All the evidence was to the effect that the defendant, Jess Brooks, was the foreman or superintendent, an *alter ego* of defendant Lumber Company. *Robinson v. Ivey,* 193 N. C., at p. 811. At the time plaintiff was injured, eight cars were attached to the engine, heavily loaded with 20 logs to a car, going down hill on a 7 per cent grade. The track was 56 inches wide and the brake wrench was 18 to 20 inches long, which was given plaintiff to use.

Plaintiff, unobjected to, testified:

"Q. What orders did Jess Brooks give you about the matter, if any? A. A few days before I got hurt they suggested not to slide no wheels and I made the statement I could not do it the way we had to apply the brakes and he said to run along slow and do it.

"Q. Who? A. Jess Brooks.

BATEMAN *v.* BROOKS.

"Jess Brooks was superintendent and train foreman over all the trains and woods. Before this time, he told us what to do with the train. He told us to go in there and apply the brakes on this car and run along slow and do it. Well, as I stated a while ago, a few days before I got hurt there Jess Brooks told me to quit sliding the wheels. That means if you slide them on the rail you wear them out.

"Q. How would you slide them? A. By tying up the brakes too tight, and I told him I could not keep from sliding them the way we had to brake.

"He said keep going over them and they would not slide. Had to tie the brakes up and if you tied them up with the train standing still and then move it the wheels would be sliding. He said to keep going over the brakes and release them so as not to slide the wheels; *if a man goes over the brakes to release them, have to go in between them on the ground to do it.* . . . Had to put the wrench in the socket, it was over 15 inches inside the rail and had to put them in and pull around and after went so far couldn't pull any further and had to take it out and set it back again. To do that I had to go in between the cars. . . . When you went between the cars to apply this brake and brake wrench you had to step over the rail to the brake if you had any power to put the brake on.

"At the time of the accident, the track where I got hurt was built right in the branch, branch on each side of the track, and it had rained that day and all wet and it was put up on rocks right in the creek. I was pulling the wrench to tighten the brake tighter, and when I did that and put more power on it to pull it tight, my hand slipped off of it. I was walking while I was putting it on, the train was moving. I was doing it that day just like I had always done it. . . . Mr. Brooks, foreman of the defendant company, was present at the time when he saw me step in between these moving cars to apply this Jim-Crow wrench. I couldn't say how many times; he was with us several days. On the occasion of my injury on 14 July, 1931, I stepped in across the steel rail to apply these brakes between the cars.

"Q. State why you put your foot across this steel rail at the time? A. When you reached over here to tie up your brakes you have to have both hands in there and you can't tell where your feet are going, just like a blind duck, and when you put your hands over here you have to put your foot inside to maintain your balance.

"My right foot was over. My left leg was cut off. I was on the right side of the car going down the hill. It was the wheel of the rear that caught me instead of the front one; the car was right behind me, had to walk right in front of it to tie up the brake."

---

---

In *Bradford v. English,* 190 N. C., at p. 745, citing numerous authorities, *Varser, J.,* speaking to the subject, said: "The instant case comes within *Tate v. Mirror Co.,* 165 N. C., 279; *Pigford v. R. R.,* 160 N. C., 101. An employer of labor may be held responsible for directions given, or methods used by reason of which an employee is injured. It is as much the duty of the master to exercise due care to provide the servant with reasonably safe means and method of work, such as proper assistance in the performance of his task, and it is to exercise due care to furnish him a safe place and proper tools and appliances." *Robinson v. Ivey,* 193 N. C., 812. Again in *Herring v. R. R.,* 189 N. C., at p. 290, citing numerous authorities, we find: "It is well settled law that railroad companies, in the conduct of their business, have a perfect right to make and promulgate reasonable rules and regulations. To be binding, they must be properly promulgated and in full force and effect—a living rule—and not revoked or abrogated by other inconsistent rules and regulations or orders. With knowledge or acquiescence of the master, either express or implied that they have been habitually violated, they are ordinarily regarded as a dead rule, waived, abrogated or revoked." *Hamilton v. R. R.,* 200 N. C., at p. 563.

If the defendant company or its *alter ego,* Jess Brooks, ever promulgated a rule that defendant in using the wrench should not go in between the cars, it was a dead rule. The *alter ego* Brooks "saw me step in between these moving cars to apply this Jim-Crow wrench. I could not say how many times." Then from plaintiff's testimony, "To do that, had to go in between the cars."

As said in *Robinson case, supra,* "without obedience, we would have chaos and anarchy, the industrial life would be stagnant."

Another aspect: Plaintiff testified:

"I first tied one brake up and went to the other one and had to pull my wrench out and set it back in to tighten it better and I tried to put it back in and my hand slipped and I fell. I hollered when I fell. After I hollered some of the other crew hollered at the engineer and he stopped then I imagine as quick as he could and it dragged me about 18 feet and it was against my leg skidding the wheel was. The engine dragged me 15 to 18 feet after I fell, and when he stopped the slack in the cars behind run down and ran over my leg. My leg is gone. It ran over it. Hurt me. It ran over my leg right there; one of the loaded cars, three or four thousand feet of logs on it. Some air brakes on these cars but in shape so could not use them. Train line was broke and air hose gone. The brakes had been in this condition 4 or 5 months. Air brakes are used on car to apply the brakes and stop the train. . . .

"Q. Do you know yourself what could have been done if there had been air brakes on the car?

"Defendants object, overruled, exception and assignment of error.

"A. They could have applied that air and held them cars off of me, the slack. I had been working there 4 years. Had air brakes before: had until 3 or 4 months.

"Q. I believe you stated this air brake business was what you had complained to Mr. Brooks about?

"Defendants object, overruled, exception and assignment of error.

"A. It had been suggested to Mr. Brooks that air brakes were necessary.

"I don't remember his answer. That had been called to his attention. About 4 or 5 months before this they let them go down; I mean didn't keep them coupled and the air lines down; 'let them go down,' means didn't keep their equipment up, train lines and things and get the brake off and not put them back. They did not have any air in them." . . .

H. N. Younce, a witness for plaintiff, testified, in part:

"They were using hand brake or Jim-Crow brake and air brake. I know what the condition of the air brakes was at the time. I left the shop 5 months before the accident.

"Q. What was the condition of them at that time?

"Defendants object, overruled, exception and assigned error.

"A. They were bad.

"After I quit working in the shop 4 or 5 months before this, the brakes were out of repair. I didn't have the proper equipment to keep them in repair. I suppose Mr. Brooks, the superintendent, knew about this. I talked to him about it. . . . Air brake is brake that works in harmony with the hand brakes and if the rear end car on the train is in excellent condition and the next car to the engine is out of condition the whole train is out of condition because the air brakes operate from the engine. . . . I know that they used the hand brakes right along with the air brakes."

Frank Ledford, a witness for plaintiff, testified, in part:

"They were using hand brakes on the train. The air brakes were not any good. They couldn't be used because the air holes were gone. . . . If we had had air brakes against the engine, each car would have stopped just where it was; stopped if the engine stopped. . . . This is not the only job I have seen the Jim Crow used on that is not standard. The brakes are used from wheel. Wheel stands up on a staff waist high. Brake on that car is on platform and to apply it stand on the car. To apply the Jim Crow have to walk on the ground and walk in between them."

Jess Brooks, defendant, testified in part, on cross-examination:

"You can use air brakes on any per cent grade you want to, but can't use in safety without hand brakes on steep grade.

"Anywhere where you can't hold with your engine, can't use air brakes; they would help to some extent. Air brakes are and are not used in emergency cases. If you didn't keep your air applied all the time to help hold the cars back, but if something should happen you would apply your air brakes, *you could stop quicker in case of emergency.* I don't know whether he would have used the air brakes or not. He was going so slow one way could stop as quick as the other. *If the air brakes had been applied it would have helped stop the cars if he had used it, but he might not have used it.* I didn't have them repair those because I didn't want them repaired. They might have stopped the train quicker; don't know they would have used them."

W. T. Latham testified in part, for defendants, on cross-examination:

"If your air brakes are in proper condition and your air line in proper condition, if you apply the air brakes it will stop the cars in a reasonable time.

"Q. I ask if the air brake system is in proper condition and properly, applied is it the best known system to stop a car quick?

"Defendants object, overruled, exception and assignment of error.

"A. Yes, I think the air would stop the car quicker than the hand brake, if properly applied."

None of these exceptions and assignments of error can be sustained. All of these witnesses were trained men in the particular avocation. They had knowledge and experience.

"It is the witness' impression, from conditions actually observed and noted by him. Even if it should be regarded as more strictly 'opinion evidence,' when it comes from a source of this kind, from one who has had personal observation of the facts, and from practical training and experience is qualified to give an opinion which is likely to aid the jury to a correct conclusion, such evidence is coming to be more and more received in trials before the jury. McKelvey speaks of it with approval as 'expert testimony on the facts.' McKelvey, p. 230." *Davenport v. R. R.,* 148 N. C., at pp. 294-5.

In *Street v. Coal Co.,* 196 N. C., page 183, it is there held:

"Where an inference is so usual, natural or instinctive as to accord with general experience its statement is received as substantially one of fact—part of the common stock of knowledge." 22 C. J., p. 530; *Britt v. R. R.,* 148 N. C., 37.

Again, it is well settled in this jurisdiction that it is not necessary to cite authorities if incompetent evidence is admitted over objection, but if the same or substantially the same evidence is given without objection, the benefit of the exception is ordinarily lost. In *Moore v. Rawls,* 196 N. C., 125, the matter of logging roads is thoroughly dis-

cussed. In that case, there is nothing said in regard to air brakes. In fact, it is undisputed on the record that they were used by defendant Lumber Company and needed repair.

Ray Williams, a witness for defendant, on cross-examination, said: "This air brake is always used in connection with the Jim Crow. It all worked together on that job, air and Jim Crow all operated same brake. I don't know how long before Bateman got injured they had not had any shop man to repair that brake; not any there at that time."

Moral Culberson, the engineer, a witness for defendant, on cross-examination, testified:

"The reason we didn't have air brakes the loading crew of the Ritter Lumber Company had knocked them out of order. Brooks knew about that and had not had them repaired."

We can see no error as to the charge on the measure of damages. The court below charged correctly as to diminished damages under the statute if the plaintiff was guilty of contributory negligence, to which there was no exception. None of the exceptions and assignments of error can be sustained.

After a careful review of the record, able briefs of litigants and the painstaking charge by the court below, covering every aspect of the law applicable to the facts, we do not think there is any prejudicial or reversible error on the record. The questions were mainly of fact for the jury to determine. The judgment of the court below is

Affirmed.