JOHN CAIN, EMPLOYEE-PLAINTIFF v. R. W. GUYTON, D/B/A G. S. AUTO PARTS & GUYTON BATTERY SERVICE, EMPLOYER-DEFENDANT, NON-INSURED

No. 8510IC555

(Filed 18 March 1986)

1. **Master and Servant § 48— workers' compensation—employment of five workers—jurisdiction of Industrial Commission**

    In an action to recover benefits under the Workers' Compensation Act, plaintiff's testimony which was corroborated by defendant's tax records was competent evidence that defendant regularly employed five or more employees during the period of plaintiff's employment with defendant and that the Industrial Commission thus had jurisdiction.

2. **Master and Servant § 56— workers' compensation—obstructive lung disease— work as "battery buster"—causal relation between employment and disease**

    In a workers' compensation proceeding a doctor's testimony that sulfuric acid fumes are a respiratory irritant, along with testimony that plaintiff often inhaled those fumes while working as a "battery buster" in defendant's employ, was sufficient to establish a causal relationship between plaintiff's work for defendant and his obstructive lung disease.

3. **Master and Servant § 93.3— workers' compensation—expert witness—hypothetical question proper**

    Plaintiff in a workers' compensation proceeding could properly ask his medical expert witness a hypothetical question which asked the doctor to assume facts pertaining to plaintiff's medical history in conjunction with his employment history, and there was no merit to defendant's contention that facts relating to cotton dust were not supported by the evidence.

    Chief Judge HEDRICK dissenting.

APPEAL by plaintiff from order of the North Carolina Industrial Commission filed 19 December 1984. Heard in the Court of Appeals 20 November 1985.

This is a claim for benefits under the Workers' Compensation Act. G.S. Chap. 97-1. On 9 October 1981, plaintiff, John Cain, instituted this action pursuant to filing a G.S. 97-22, Notice of Accident to Employer, with three of his former employers: defendant, Guyton Battery Service; Thomasville Furniture Industries, Inc.; and Bladenboro Cotton Mills. The notice alleged that plaintiff had contracted an occupational disease, to wit: a cardio-respiratory disease. Plaintiff settled his case against Bladenboro Cotton Mills and was allowed a voluntary dismissal of his claim against Thomasville Furniture Industries, Inc.

On 30 August 1982, plaintiff's claim against defendant R. W. Guyton, d/b/a G.S. Auto Parts & Guyton Battery Service came to be heard before Deputy Commissioner Bryant. In an opinion filed 24 September 1983, an opinion and award favorable to plaintiff was entered by Deputy Commissioner Bryant. Defendant appealed to the Full Commission. From an opinion and award of the Full Commission favorable to plaintiff, with one commissioner dissenting, defendant appeals.

*Charles R. Hassell, Jr., for plaintiff appellee.*

*Williamson & Walton, by Benton H. Walton, III, for defendant appellant.*

JOHNSON, Judge.

[1] Defendant contends that the record herein does not support a finding of the Industrial Commission's jurisdictional prerequisite that defendant regularly employed five or more employees. After careful consideration of the record herein, we disagree. During the time frame in question the Workers' Compensation Act by statute was inapplicable to any employer "that has regularly in service less than five employees. . . ." G.S. 97-13(b) (amended 1979). The term "employment" was then defined as including "employments in which five or more employees are regularly employed in the same business or establishment. . . ." G.S. 97-2(1) (amended 1979). This Court has construed this requirement as jurisdictional. *See Wiggins v. Rufus Tart Trucking Co.*, 63 N.C.

App. 542, 305 S.E. 2d 749 (1983). The plaintiff has the burden of proving that the employer regularly employed five or more employees. *See Aylor v. Barnes*, 242 N.C. 223, 87 S.E. 2d 269 (1955). The Commission's findings of jurisdictional facts are not conclusive on appeal even if they are supported by competent evidence. *Askew v. Leonard Tire Co.*, 264 N.C. 168, 141 S.E. 2d 280 (1965). Where a party contests the jurisdiction of the Industrial Commission a reviewing court must consider all the evidence in the record and make an independent determination of the jurisdictional facts. *Weston v. Sears Roebuck & Co.*, 65 N.C. App. 309, 309 S.E. 2d 273 (1983), *disc. rev. denied*, 311 N.C. 407, 319 S.E. 2d 281 (1984). With respect to the jurisdictional question raised by defendant the evidence in the case *sub judice* tended to show the following: Plaintiff went to work for defendant during the 1960's. Defendant employed plaintiff for the purposes of "busting batteries" with an ax in order to beat the lead out of the batteries, loading battery hulls onto a truck, and driving the trucks loaded with battery hulls. Defendant, Mr. Guyton, supervised plaintiff and paid plaintiff primarily in cash. On those occasions when plaintiff was paid by check, they were drawn on Guyton Battery Service checks. During the period wherein plaintiff worked for defendant, there were more than five people working on the premises "busting batteries," and loading or unloading trucks. During periods of heightened activity the number of workers would increase to as many as ten (10). In 1966 income was reported to the Internal Revenue Service for twenty (20) employees of defendant. In 1968, income for twenty-three (23) employees of defendant was reported to the Internal Revenue Service. We conclude that plaintiff's testimony which was corroborated by defendant's records is competent evidence that defendant regularly employed five or more employees during the period of plaintiff's employment with defendant and that the Commission thus had jurisdiction.

[2]  Defendant's next Assignment of Error is that the Industrial Commission erred in finding that there was a causal relationship between plaintiff's work for defendant and the disability plaintiff suffers from. We disagree.

G.S. 97-53(13) establishes when diseases and conditions will be deemed as occupational diseases within the meaning of the

Workers' Compensation Act. The applicable provision to the case *sub judice* is G.S. 97-53(13), which is as follows:

> (13) Any disease other than hearing loss covered in another subdivision of this section, which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment but excluding all ordinary diseases of life to which the general public is equally exposed outside of the employment.

G.S. 97-53(13). In *Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 301 S.E. 2d 359 (1983), our Supreme Court articulated the applicable requirements for proving a causal relationship in occupational disease claims filed pursuant to G.S. 97-53(13). The Court adopted the "significant contribution" principle so as to strike a fair balance between the employee and the employer in the application of the Workers' Compensation Act in difficult lung disease cases. *Rutledge*, at 105, 301 S.E. 2d at 372. The Court deemed the following matters worthy of consideration:

> In determining whether a claimant's exposure to cotton dust has significantly contributed to, or been a significant causative factor in, chronic obstructive lung disease, the Commission may, of course, consider medical testimony, but its consideration is not limited to such testimony. It may consider other factual circumstances in the case among which are (1) the extent of the worker's exposure to cotton dust during employment, (2) the extent of other non-work-related, but contributing, exposures and components; and (3) the manner in which the disease developed with reference to the claimant's work history.

*Id.* (citations omitted). We now turn to that evidence which supports a determination that there was an increased risk by plaintiff of contracting chronic pulmonary disease because of his employment with defendant as a "battery buster."

The evidence tended to establish that plaintiff would work for defendant in periods of eight months during the years from 1964 to 1969. Plaintiff suffered a pre-existing chronic obstructive pulmonary disease attributable to his smoking cigarettes, earlier industrial exposure to cotton dust, and dust along with fumes in a furniture factory where he was employed prior to his employment

as a "battery buster." The only source of heat available to the "battery busters" was the burning of battery hulls which produced a black smoke which was inhaled by plaintiff. When the employees were bursting batteries, the liquid acid and fumes contained therein would be released. After bursting the battery the casing was cut away so that the lead could be extracted from the battery. The acid, which was released, would burn human flesh and corrode clothes and shoes.

When plaintiff would drive the trucks loaded with lead intended for smelting he would sleep in the trucks at night. The acid fumes were so strong that "[y]ou had to turn where the fumes wouldn't come, your back reversed to the trailer or truck to keep the fumes from coming your way. I was unable to take a deep breath when I was in it."

Dr. Saltzman testified that "I have an opinion to a reasonable degree of medical probability that sulfuric acid vapors or fumes are a respiratory irritant." Plaintiff's medical history reveals that "[h]e had classic findings of chronic obstructive lung disease." Based on plaintiff's history Dr. Saltzman testified as follows:

Based on the history, the physical examination and the lab tests of his visits on January 6 and later on February 2, I diagnosed a very severe chronic obstructive pulmonary lung disease with a clinical picture of chronic asthmatic bronchitis, history of hyper-reactivity compatible with no good documentation of allergic difficulty, and as I stated, I interpreted the exposure to be minimal and insignificant as to cigarette smoking, and as I stated, there clearly has been some aggravation of symptoms in association with his industrial exposure. Then I went on in the medical occupational assessment at the end of that note and I stated that, 'Clearly this patient has had industrial exposures that have been associated with respiratory distress and relevant symptomalogy. These industrial exposure (sic) can cause respiratory problems not occurring in individuals not so exposed. Clearly this patient is severely impaired. I interpret him to have Class IV AMA Impairment—70% whole body. At least 60% of the whole body impairment is interpreted to reflect his chronic obstructive pulmonary disease.'

In *Rutledge v. Tultex Corp./Kings Yarn*, 308 N.C. 85, 301 S.E. 2d 359 (1983), the Court held that the chronic obstructive lung disease entitled the claimant to recover the entire disability so long as the occupation related cause was a significant causal factor in the disease's development. *Id.* at 101, 301 S.E. 2d at 369-70. The doctor's testimony that the acid fumes are a respiratory irritant, along with testimony that plaintiff often inhaled those fumes, is sufficient to establish a causal relationship with plaintiff's obstructive lung disease. Indeed the Commission found as fact the following:

> 21. Normally, exposure to sulfuric acid fumes would cause acute bronchitis without permanent damage; however, because plaintiff's lungs were hyperreactive and already affected by cotton dust exposure, wood dust exposure, and furniture glue fumes exposure, it is more likely that the sulfuric acid fumes from the battery busting aggravated and accelerated his lung disease and caused permanent damage that has progressed and totally disabled the plaintiff.

The Full Commission's finding supports its conclusion of law that the chronic obstructive pulmonary disease contracted by plaintiff was significantly contributed to by the fumes in his employment. The Full Commission also concluded as a matter of law that "plaintiff was last injuriously exposed to the hazards of this occupational disease while employed by defendant-employer." In compensable cases of occupational diseases, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease "shall be liable." G.S. 97-57. This statute does not require an independent showing of a significant contribution to the occupational disease. *Rutledge, supra.* The Court in *Rutledge, supra,* citing *Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 166, 169, 22 S.E. 2d 275, 277, 278 (1942), construed "last injuriously exposed" to mean "an exposure which proximately augmented the disease to any extent, however slight." *Rutledge,* at 89, 301 S.E. 2d at 362-63. Plaintiff's last employment was with defendant. We conclude that the Full Commission correctly applied the appropriate legal standard and therefore defendant's Assignment of Error alleging insufficient proof of causation is overruled.

---

---

[3]   Defendant's final Assignment of Error is that the Full Commission erred in overruling defendant's objections to a hypothetical question posed by plaintiff to his expert witness. We disagree.

The hypothetical question propounded to Dr. Saltzman merely asked the doctor to assume facts pertaining to plaintiff's medical history in conjunction with his employment history. "[T]here is substantial authority to the effect that the interrogator may form his hypothetical question on any theory which can be deduced from the evidence and select as a predicate therefor such facts as the evidence reasonably tends to prove." *Dean v. Carolina Coach Co.*, 287 N.C. 515, 518, 215 S.E. 2d 89, 92 (1975), citing with approval, 31 Am. Jur. 2d *Expert and Opinion Evidence*, sec. 56 at 562; *Pigford v. Norfolk Southern R.R.*, 160 N.C. 93, 75 S.E. 860 (1912).

Defendant contends that facts relating to cotton dust are not supported by the evidence. However, in earlier testimony Dr. Saltzman testified as follows:

> I also obtained a history, detailed questioning of Mr. Cain in regard to his past exposures in industrial environments. Mr. Cain told me about his prior work history, that he had worked initially at a lumber company and then he worked in the Bladenboro Cotton Mill in the card room between 1949 and 1953, and described that environment as so dusty that you would have difficulty in seeing, and it was in that interval that he first recalls having tightness or congestion in his chest and shortness of breath which he described to be progressive during the course of the work week and better when away from work and considerably better during the weekends, and he was told at that time that he had asthma.

This testimony by Dr. Saltzman was sufficient to form the basis for the hypothetical posed to him, which utilized the fact of plaintiff's exposure to cotton dust. Defendant had ample opportunity to cross-examine Dr. Saltzman and present alternative historical data. *See Rutledge, supra.* Defendant's final Assignment of Error is overruled.

Affirmed.

Judge WHICHARD concurs.

Chief Judge HEDRICK dissents.

Chief Judge HEDRICK dissenting.

I do not believe that there is competent evidence in the record to support the Industrial Commission's findings and conclusions that plaintiff's lung condition was significantly contributed to and aggravated by his exposure to battery acid fumes and that he was last injuriously exposed to the hazards of occupational lung disease while employed by defendant. The only evidence in the present case concerning the relationship between plaintiff's exposure to battery acid fumes and his lung disease is the testimony of Dr. Saltzman. He testified that:

> [M]ost acid fume exposures produce reversible, short-term injury and the effects subside when the exposure terminates. Presumably there must be some point at which exposure to acid fumes is intense enough and long enough that permanent changes can occur. Whether or not that is the case in this individual is not defined.

Dr. Saltzman further testified that the exposure to the fumes "could . . . or might" have aggravated plaintiff's lung disease. The record is devoid of evidence that plaintiff's exposure to fumes in fact contributed to this disease to any extent. Therefore, I dissent from the opinion of the majority and vote to reverse.